**UNITED STATES of America,**

v.

**Nefdale Grisales CALLE, et al.**

**Crim. No. R–91–0274.**

United States District Court,
D. Maryland.

June 23, 1992.

Andrea L. Smith, Brent J. Gurney, Asst. U.S. Attys., Baltimore, Md., for plaintiff.

E. Thomas Maxwell, Baltimore, Md., for defendants.

## MEMORANDUM OPINION

RAMSEY, Senior District Judge.

Defendant, Nefdale Calle, was indicted, together with Beatrice Taylor and Martha Grisales, for conspiracy to possess with intent to distribute over 5 kilograms of cocaine, in violation of 21 U.S.C. § 846, and for possession with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(A)(ii). On December 2, 1991, the defendant pled guilty to the conspiracy count. The plea was entered pursuant to a written plea agreement, and the Court accepted it under Fed.R.Crim.Pro. 11(e)(1)(B).

On June 4, 1992, the defendant appeared before the Court for sentencing. At that hearing, counsel for the government asked the Court to depart downward from the applicable guideline range by 4 levels pursuant to U.S.S.G. § 5K1.1. According to the government's computation of the applicable guideline range, this departure would have resulted in a sentence below the 10 year minimum mandated by § 841(b)(1)(A)(ii). Because the circumstances surrounding this recommendation required further consideration, the Court continued the sentencing. For the reasons set forth below, government's motion for departure is denied, and the Court will sentence the defendant within the guideline range resulting from the considerations herein outlined.

### BACKGROUND

The presentence report contains a written stipulation in which the government and Mr. Calle agreed that the government could prove that Mr. Calle was a member of a cocaine distribution conspiracy involved in transporting large quantities of cocaine between New York and Washington, D.C. It appears that Mr. Calle would make arrangements for the deliveries with his connections in New York and Washington, and would then personally drive between the two cities with the cocaine secreted in his car. When he reached his destination (often a hotel near Washington), he would telephone a co-conspirator who would pick up the car from a designat-

ed parking lot and make the final delivery.[1] Mr. Calle stipulated that he made many such trips. While the stipulation is ambiguous as to the precise number, there is evidence that he made at least fifteen separate deliveries to a single hotel, and the government has represented to the Court that it recently learned from another member of the conspiracy that Mr. Calle conducted these delivery trips almost weekly for up to two years. On some of these occasions, the defendant would pay Ms. Grisales, Ms. Taylor, and others small sums to accompany him, translate when necessary, register at the hotel, and provide companionship.

The plea agreement provided, *inter alia*, that the defendant would cooperate fully with the government in the investigation of drug activity including, but not limited to, that of his two codefendants, and that he would testify as needed. In exchange for the defendant's plea and his promised cooperation, the government agreed (1) to recommend a 2 level downward departure pursuant to U.S.S.G. § 5K1.1 at sentencing, (2) not to recommend any upward adjustment in the defendant's offense level for role in the offense under § 3B1.1, and (3) to dismiss the remaining count of the indictment. In addition, the agreement provided that

> In the event your client decides to provide substantial assistance to federal law enforcement authorities in the investigation and prosecution of cases beyond the immediate matter numbered R–91–0274, the Government, in its sole discretion, may ask the Court to make a further reduction of your client's sentence pursuant to Rule 35, Federal Rules of Criminal Procedure.

In furtherance of the agreement, Mr. Calle was prepared to testify against his wife, Martha Grisales, and actually testified against Beatrice Taylor. Ms. Grisales pled guilty, and Ms. Taylor was convicted by a jury. At the request of the government, the Court postponed the sentencing of Ms. Grisales and Mr. Calle in order that their planned cooperation at the trial of the related case involving Bobby Lee Haynes and Gloria Richards could be taken into account. Mr. Haynes and Ms. Richards both pled guilty, and the § 5K1.1 recommendations at issue here followed.

ANALYSIS

28 U.S.C. § 991(b)(1) provides that "the purposes of the United States Sentencing Commission are to—

> (1) establish sentencing policies and practices for the Federal criminal justice system that—
>
> > (A) assure the meeting of the purposes of sentencing as set forth in section 3553(a)(2) of title 18, United States Code;
> >
> > (B) provide certainty and fairness in meeting the purposes of sentencing, *avoiding unwarranted sentencing disparities* among defendants with similar records who have been found guilty of similar criminal conduct *while maintaining sufficient flexibility to permit individualized sentences* when warranted by mitigating or aggravating factors not taken into account in the establishment of general sentencing practices ..." (emphasis added).

18 U.S.C. § 3553(a)(2) sets forth the purposes of sentencing to be furthered by the guidelines. Paragraph (A) directs the consideration of the need for the sentence im-

1. Mr. Calle was arrested during such a trip. Members of the Drug Enforcement Agency and the D.C. Metropolitan police had learned through a confidential informant that on a certain date, a shipment of cocaine would likely arrive at a specified hotel in Cheverly, Maryland. According to the informant, the shipment would be left in the hotel parking lot in a red Nissan with New York license plates, and would be picked up by a black male and taken to another location. The DEA placed the hotel parking lot under surveillance, and observed a white Hyundai with New York tags drive onto the lot. The car was driven by Mr. Calle, and he was accompanied by Martha Grisales, Beatrice Taylor, and a small child. Mr. Calle and Ms. Taylor each made several calls from a public telephone, and Ms. Taylor quickly boarded a train bound for New York. Several hours later, the agents observed a black male, Bobby Lee Haynes, drive into the hotel parking lot, proceed immediately to the white Hyundai, and drive away. Mr. Haynes was later stopped, and a search of the Hyundai revealed approximately seven kilograms of 94% pure cocaine hidden in a secret compartment welded to the car's frame.

posed "to reflect the seriousness of the offense, and to provide just punishment for the offense." [2] *See also United States Sentencing Commission Guidelines Manual* at 2 (1991). Consistent with these directives, the Sentencing Commission has attempted to promulgate guidelines which "determin[e] the appropriate sentence based on a defendant's actual offense conduct, rather than what the prosecutor charged and the court convicted the defendant of doing." United States Sentencing Commission, *Special Report to the Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System* at 33 (August, 1991) (hereinafter *"Special Report"*).

The positions advanced by the government at the sentencing hearings in this case stand in complete contradiction to these goals. This case presents a shocking example of the injustices over which district judges are asked (or forced) to preside under current law and executive policy. Because the sentences received by each of the three defendants in this case differ significantly from one another and from the government's recommendations, some explanation of the Court's reasoning is in order.

■ The guideline sentencing system relies on an elaborate set of rules which assign predetermined consequences to generic facts, and the primary focus of the relevant inquiry has therefore shifted from the defendant and the crime to the bare mechanics of the computation. The guidelines attempt to minimize the disadvantages of this shift by prescribing elaborate schemes which ostensibly account for many of the qualitative considerations that governed the determination of pre-guideline sentences. The Commission has therefore provided for numerous adjustments to a defendant's offense level based on, *inter alia,* various specific offense characteristics, the defendant's role in the offense, any obstruction of justice, and the characteristics of the victim. Where the court finds, by a simple preponderance of the evidence, that the facts of a case satisfy the elements of a defined guideline consideration, it is without discretion to determine whether, and often to what degree, these facts affect the sentence. *See United States v. Urrego–Linares*, 879 F.2d 1234 (4th Cir.1989), *cert. denied*, 493 U.S. 943, 110 S.Ct. 346, 107 L.Ed.2d 334 (1989). While its input is limited, the Court can, in theory, rest assured that the result will comport with uniform guideline policy.

A sentencing court is obliged both to make accurate factual findings based on the evidence and to accept the view of the Sentencing Commission as to the significance of those findings to the appropriate sentence in a given case. The court's quasi-ministerial role presents prosecutors with little incentive to aid the court by supplying a complete picture of the circumstances surrounding the offense. Rather, the prosecutor now has substantial power to control the outcome at sentencing simply by regulating the facts available to the court. In practice, prosecutors and defendants can, and do, bargain for specific results by entering into stipulations regarding the facts to be brought before the sentencing court. The record in this case is replete with examples of the enormous consequences that can flow from the government's decision to present or withhold facts. This practice not only plucks sentencing discretion from the court and places it in the hands of the prosecutor, but it also thoroughly frustrates the theory and goals underlying guideline sentencing by preventing relevant facts from affecting the sentence as contemplated by the Commission.

The wholesale transfer of sentencing authority from the judiciary to the executive has been the subject of frequent and pointed criticism, in which this Court has often joined. *See, e.g., United States v. Harrington*, 947 F.2d 956, 963–970 (D.C.Cir. 1991) (Edwards, J., concurring) (collecting cases). Nonetheless, it is the Court's duty to insure, to the greatest extent possible, that each defendant is sentenced according

---

**2.** It is ironic indeed that Congress felt that the Sentencing Commission and the courts required

a statutory mandate to impose sentences with an eye toward justice.

to a principled application of the guidelines which effectuates their full content as well as their statutory purpose. Because prosecutors possess immense power over the deprivation of liberty, they share with the court a solemn responsibility to insure that the paramount interest of federal sentencing, that of justice, is served. *See* U.S.S.G. Ch. 6, Pt. B, intro. comment., quoting S.Rep. 98–225, 98th Cong., 1st Sess. 63, 167 (1983). ("Congress has indicated that it expects judges 'to examine plea agreements to make certain that prosecutors have not used plea bargaining to undermine the sentencing guidelines.' ").

■ Incomplete or tendentious presentation of the facts at sentencing impacts pure guideline sentencing in an undesirable manner, but the effect on discretionary departures can be disastrous. Under the guidelines, the Court bears the responsibility for determining whether the applicable guideline range has failed to take aggravating or mitigating circumstances into account, and whether in its discretion, that failure warrants a departure. U.S.S.G. §§ 5K1.1, 5K2.0. In this context, the guidelines limit the grounds for departure, but preserve the institutional role of the court as factfinder and decisionmaker.[3] Because the effect of aggravating and mitigating circumstances on the question of departure is not preordained but rather decided on a case by case basis, it is essential that the court have access to the full range of relevant facts known to both sides. The failure to present all facts relevant to the basic guideline computation demonstrates a lack of regard for the role of the court and the purposes of the guidelines. The failure to present all material facts in the context of a motion for a discretionary departure constitutes an affirmative abuse of the court's integrity.[4]

### 1. Beatrice Taylor

After Ms. Taylor's conviction, the government sought a sentence of between 188 and 235 months imprisonment, in spite of the fact that Ms. Taylor was at most a peripheral participant in the conspiracy. As a result of the government's initial decision to charge Ms. Taylor under 21 U.S.C. § 841(b)(1)(A)(ii) as opposed to § 841(b)(1)(C), the statutory mandatory minimum sentence of ten years applied. Finding a ten year nonparolable sentence insufficient, the government attributed to Ms. Taylor the entire amount of cocaine that Mr. Calle testified had been transported while she was a passenger in the car. This resulted in a base offense level of 34. In its fervor to achieve the maximum possible punishment, the government cast aside any pretense of concern for uniformity and fairness and sought an additional two-level enhancement for obstruction of justice, on the grounds that the guilty verdict supported a finding that Ms. Taylor's testimony in her own defense constituted perjury. Counsel for the government acknowledged that the Court could not grant the motion for enhancement without disregarding the rule in *United States v. Dunnigan,* 944 F.2d 178 (4th Cir.1991), *cert. granted,* —— U.S. ——, 112 S.Ct. 2272, 119 L.Ed.2d 199 (1992). Noting that *Dunnigan* had recently been reaffirmed in *United States v. Fuentes,* 953 F.2d 640 (4th Cir.1992), the Court denied the motion.

The government sought this sentence for Ms. Taylor knowing full well that it intended to seek a sentence roughly half as severe for Ms. Grisales, an equally minor participant, and for Mr. Calle, the central

**3.** The Commission has not yet promulgated guidelines governing plea agreement procedure. The policy statements, however, indicate clearly the Commission's awareness that current practice often results in "unwarranted sentencing disparity." U.S.S.G. Ch. 6, Pt. B, intro. comment. *See also United States v. Andrews,* 1992 WL 100928, 1992 U.S. Dist. LEXIS 6370 (N.D.Ill. May 5, 1992). The current policy statements "make clear that sentencing is a judicial function and that the appropriate sentence in a guilty plea case is to be determined by the judge.

*This is a reaffirmation of pre-guidelines practice." Id.*

**4.** This is not to say that the government cannot properly conduct secret negotiations in the course of its investigations, and that these negotiations may not benefit the defendant in some way. Under current practice, however, the government commonly uses the blind, and therefore involuntary, aid of the court as its consideration for guilty pleas.

figure in the case.[5] While the Court reduced Ms. Taylor's offense level by 3 for a role in the offense between minor and minimal pursuant to U.S.S.G. 3B1.2, it was bound by the statute to impose a sentence of ten years. The ten year sentence was particularly outrageous in light of Ms. Taylor's lack of any criminal record, extremely stable employment history, and family situation. Had the Court not been constrained by the statutory minimum, the facts surrounding Ms. Taylor's family alone would have certainly have warranted a substantial downward departure under U.S.S.G. § 5K2.0.

### 2. Martha Grisales

Pursuant to the plea agreement, in which the government agreed not to use information gained from the defendant, the government recommended a base offense level of 32 to reflect only the amount of cocaine known at the time of her arrest. Ms. Grisales received a two level adjustment for acceptance of responsibility, and the government made an open ended motion for downward departure pursuant to § 5K1.1, so that she could be sentenced in parity with Mr. Calle. The government took the position, under *United States v. Peralta*, 741 F.Supp. 1197 (D.Md.1990), *aff'd on other grounds*, 937 F.2d 604 (4th Cir.1991) (unpublished), *cert. denied*, —— U.S. ——, 112 S.Ct. 597, 116 L.Ed.2d 621 (1991), that the Court was not entitled to consider any grounds for reduction below the 10 year statutory minimum other than those relating specifically to Ms. Grisales' cooperation. According to the government, and the lower court opinion in *Peralta*, the Court was precluded from considering any grounds for departure specified in 5K2.0, as well as the grounds for downward adjustment enumerated elsewhere in the guideline manual in arriving at a sentence below the ten year minimum.

In *United States v. Wade*, 936 F.2d 169 (4th Cir.1991), *cert. granted*, —— U.S. ——, 112 S.Ct. 635, 116 L.Ed.2d 653 (1991), the

Court held that a motion by the government pursuant to U.S.S.G. § 5K1.1 was sufficient to enable the Court to depart below the statutory minimum sentence pursuant to 18 U.S.C. § 3553(e). *Peralta* significantly limited the scope of the Court's discretion under § 3553(e), holding that a sentencing Court is precluded as a matter of law from considering any facts as grounds for departure below the mandatory minimum sentence other than those which gave rise to the government's § 5K1.1 motion. The Fourth Circuit affirmed *Peralta* in an unpublished per curiam opinion, but expressly limited its affirmance to the alternative holding that the facts in that case would not support further departure even if the Court had authority to consider them. *Peralta*, 937 F.2d 604 (4th Cir.1991) (unpublished). Because the central holding in *Peralta* was never embraced by the Fourth Circuit, the Court found it appropriate to revisit the proper interpretation of the scope of its authority under U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e). The Court rejected *Peralta*, and concluded that the government's § 5K1.1 motion permitted consideration of grounds for departure in addition to the defendant's substantial assistance. Defendant therefore received the benefit of a three-level reduction for role in the offense, a two level reduction for acceptance of responsibility, and an additional ten level departure.

18 U.S.C. § 3553(e) provides:

*Limited authority to impose a sentence below a statutory minimum.*—Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense. Such sentence shall be imposed in accordance with the guidelines and policy statements issued by the Sentencing Commis-

---

5. The offense level sought by the government would have resulted in a sentence equivalent to that intended by the guidelines had Ms. Taylor been convicted of attempt to commit first de-

gree murder for hire, resulting in actual permanent or life-threatening bodily harm. U.S.S.G. § 2A1.1.

sion pursuant to section 994 of title 28, United States Code.

*Peralta* held that the court's "limited authority" to depart below the statutory minimum was strictly circumscribed by the need to account for the defendant's assistance itself. The court reasoned that the statute permits a sentence below the mandatory minimum "to reflect a defendant's substantial assistance in the investigation or prosecution of another person," and that consideration of any additional factors would conflict with the "limited authority" language in the heading. Under this approach, the fact that the circumstances in a given case may warrant an adjustment or departure which yields a sentence far more lenient than the mandatory minimum is irrelevant.

■ As a matter of statutory construction, the Court finds that the heavy reliance in *Peralta* on the words "limited authority" in the heading is misplaced. In *Brotherhood of R. Trainmen v. Baltimore & O.R. Co.*, 331 U.S. 519, 67 S.Ct. 1387, 91 L.Ed. 1646 (1947), the Court recognized

> ... the wise rule that the title of a statute and the heading of a section cannot limit the plain meaning of the text. For interpretive purposes, they are of use only when they shed light on some ambiguous word or phrase. They are but tools available for the resolution of a doubt. But they cannot undo or limit that which the text makes plain.

*Id.* at 528–529, 67 S.Ct. at 1392 (citations omitted); *see also United States v. Castro*, 837 F.2d 441 (11th Cir.1988). Where the language contained in a statutory heading is itself ambiguous, it is certainly not entitled to controlling weight. "Limited authority" is, in the context of the express language of the statute, a highly ambiguous phrase. The statute does not indicate whether the court's authority to depart is limited *by* the fact of the government's discretionary decision to make a motion for departure, or whether it is limited *to* the consideration of the cooperation itself. Accordingly, this Court holds that the title of the statute is an insufficient basis on which to conclude that no consideration beyond

cooperation itself is relevant to a departure once the government has moved under § 5K1.1.

■ *Peralta* rejected the argument that the reference in § 3553(e) to a "sentence imposed in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code" means that the sentence shall be imposed in accordance with *all* the guidelines. Rather, *Peralta* created a new hybrid sentencing structure in which the sentence is controlled entirely by (1) the statutory minimum sentence and (2) those guidelines promulgated for the express purpose of rewarding a defendant for substantial assistance. Had Congress wished to so limit the court's authority, it could have provided that the sentence be imposed in accordance with guidelines issued pursuant to § 3553(e) itself. It did not do so. The statute expressly provides for a sentence computed under guidelines issued pursuant to the general statutory mandate of 28 U.S.C. § 994, on which *all* guidelines are based.

■ Further, the statute provides that when a Court exercises its authority pursuant to a § 5K1.1 motion, the resulting reduced sentence shall be imposed in accordance with *both* guidelines and policy statements. There are, contrary to the discussion in *Peralta*, *no* guidelines specifically implementing § 3553(e). Rather, § 5K1.1 and its application notes are mere policy statements. Again, the expansive wording chosen by Congress suggests an intent to include in the sentencing decision the guidelines and policy statements existing at the time the statute was enacted. Unless the word "guidelines" in the statute is to be deemed superfluous, this Court concludes that when it imposes a sentence under § 3553(e), the sentence must comport with the guideline range that would apply absent any statutory minimum sentence. In short, the Court agrees with the government that its power to descend below the mandatory minimum is "limited," but only by the government's willingness to move under § 5K1.1. Once the govern-

ment so moves, the most sensible interpretation of the statute is that the Court is restored to its function as a full guideline sentencing Court.[6]

Finally, it is worth noting that the Sentencing Commission itself considers the current regime of mandatory minimum sentencing to be antithetical to the entire concept of guideline sentencing. *See generally, Special Report.* In view of the Commission's vehement attacks on the mandatory minimum provisions, it is extremely improbable that it envisioned a system under which §. 5K1.1 would embody the universe of sentencing options.[7]

18 U.S.C. § 3553(b) permits the Court to impose a sentence outside the range established by the guidelines if "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines...." U.S.S.G. § 5K2.0 candidly concedes that "[c]ircumstances that may warrant departure from the guidelines pursuant to this provision cannot, by their very nature, be comprehensively listed and analyzed in advance. *The controlling decision as to whether and to what extent departure is warranted can only be made by the court."* (emphasis added). In this case, the Court found several grounds for a departure from the basic guideline range.

A. *Extraordinary family circumstances.* The Court found that the defendant's family situation was both unusual and highly relevant to the circumstances surrounding the offense. Ms. Grisales and Mr. Calle have a three year old child, and the fact that both parents faced certain incarceration as a result of their guilty pleas required the relocation of the child to family care outside the United States. It further appeared that in an effort to protect the child from precisely this predicament, Ms. Grisales voluntarily left Mr. Calle because of his criminal lifestyle, and eventually returned only upon assurances that this lifestyle would end.

In a recent decision, *United States v. Johnson,* 964 F.2d 124 (2d Cir.1992), the Court affirmed the granting of a ten level downward departure for extraordinary family circumstances. The facts of the two cases are similar. In *Johnson,* as in this case, the defendant was a single mother, charged with the sole responsibility of supporting her children. In *Johnson,* the childrens' father was unemployed and a resident of a different state. In this case, the father is incarcerated, and while Ms. Grisales herself is incarcerated, the only option for the child was relocation.

The Court recognized that in ordinary cases, family hardship is not a ground for downward departure. U.S.S.G. § 5H1.6 (policy statement). In the words of the Second Circuit, however, "[t]he United States Sentencing Guidelines do not require a judge to leave compassion and common sense at the door to the courtroom." Noting that the policy statements concerning family circumstances were instructive but not dispositive, that Court held that "[t]he rationale for [the ten level departure] here is not that [the defendant's] circumstances decrease her culpability, but that we are reluctant to wreak extraordinary destruction on dependents who rely solely on their

---

**6.** The Court noted at Ms. Grisales' sentencing hearing that the special facts in this case, i.e., family circumstances and duress, could very well be taken into account under the application notes to § 5K1.1 itself. Those notes provide, *inter alia,* that

"[t]he nature, extent, and significance of assistance can involve a broad spectrum of conduct that must be evaluated by the court on an individual basis. Latitude is, therefore, afforded the sentencing judge to reduce a sentence based upon variable relevant factors, including those listed above...."

Accordingly, the Court may, where appropriate, consider the value of the defendant's assistance in light of the circumstances surrounding her participation in the offense.

**7.** This case presents a classic illustration of the perverse results that often flow from the interplay of the sentencing guidelines and statutory mandatory minimum sentences. Beatrice Taylor exhibited a level of culpability and personal characteristics roughly similar to Ms. Grisales. Because Ms. Taylor was not the beneficiary of a § 5K1.1 motion, however, she received the mandatory minimum sentence of 120 months imprisonment—a sentence which was so completely disproportionate to the realities of the proceeding as to shock the conscience of the Court.

mother for their upbringing." This Court agreed with the reasoning in *Johnson,* and found that the family circumstances in Ms. Grisales' case counseled a downward departure.

*B. Duress.* Evidence from several sources, including Mr. Calle, suggested that the defendant's involvement in Mr. Calle's drug trafficking operations was motivated by the fact that Mr. Calle took their child, and threatened the defendant that unless she participated, she would not see the child again. There was insufficient proof on the record to indicate whether the defendant could have established duress under U.S.S.G. 5K2.12 (policy statement), but there was clear evidence of the type of coercive manipulation present in *United States v. Naylor,* 735 F.Supp. 928 (D.Minn. 1990). In *Naylor,* the defendant had been manipulated into involvement with narcotics by a man 15 years her senior with whom she was romantically involved. Judge Devitt found that, though inadequate to establish duress under § 5K2.12, these circumstances were sufficient to warrant a departure of approximately 8 levels. The probation officer indicated her belief that the facts of this case would warrant a downward departure for duress, and the Court agreed that a departure was indeed appropriate under these facts.[8]

*C. Substantial Assistance.* Ms. Grisales was prepared to testify in the cases against Beatrice Taylor, Bobby Lee Haynes, and Gloria Richards. Although Mr. Haynes and Ms. Richards eventually pled guilty, the government represented that Ms. Grisales endeavored to provide such assistance as she could. The Court therefore found that a departure was warranted under § 5K1.1. Combining the total effect of the departures to which Ms. Grisales was entitled, the Court found that a ten level downward departure was appropriate, resulting in an offense level of 17. Ms. Grisales was sentenced accordingly.

*3. Nefdale Calle*

■ The government has moved for a 4 level departure below the applicable guideline range and the statutory minimum under § 5K1.1, to reward Mr. Calle for his assistance in the investigation of the other members of the conspiracy. Once the government makes a motion pursuant to § 5K1.1, the determination of the precise measure of the departure is a matter within the Court's discretion. *United States v. Damer,* 910 F.2d 1239, 1241 (5th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 535, 112 L.Ed.2d 545 (1990); *United States v. Peralta,* 937 F.2d 604 (4th Cir.1991) (unpublished), *cert. denied,* —— U.S. ——, 112 S.Ct. 597, 116 L.Ed.2d 621 (1991). After careful consideration of the factors set forth in § 5K1.1, the Court concludes that the defendant's conduct under his plea agreement warrants no departure.

U.S.S.G. § 5K1.1 sets forth a non-exclusive list of the factors to be considered in connection with a motion for departure for substantial assistance. These include:

(1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into account the government's evaluation of the assistance rendered;

(2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

(3) the nature and extent of the defendant's assistance;

(4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance; and

(5) the timeliness of the defendant's assistance.

In considering the first factor, the Court notes that the government has represented that Mr. Calle's assistance was instrumental in securing the convictions of his four co-conspirators. Nonetheless, the Court found, in its discretion, that not all of these convictions resulted in a benefit significant

---

**8.** After the Court had imposed its sentence, the government indicated to the Court that it had evidence that Ms. Grisales was a very willing and active participant in the conspiracy. The Court is not now in a position to hear or evalu-

ate this evidence, and it is worth noting that the government is in no position to complain about the result where it failed to present the Court with an accurate version of the facts.

enough to justify rewarding Mr. Calle with a downward departure. The conviction of Bobby Haynes was clearly important to the government. Beatrice Taylor and Martha Grisales, however, were such minor participants in this conspiracy that to permit this defendant an additional benefit for his aid in their cases would be unjust.[9] The Court therefore found that the overall value of the assistance had been somewhat overstated by counsel for the government.

Consideration of the second and third factors require a closer examination of Mr. Calle's plea agreement. As noted above, the agreement contains an important internal inconsistency. Paragraph 3 requires Mr. Calle to "truthfully disclose *everything* he knows about drug activity and *about any other matters as to which the government may choose to inquire.*" Paragraph 4 provides that in exchange "for providing assistance in the investigation and prosecution of co-defendants including, but not limited to Martha Grisales and Beatrice Taylor," the government will make a motion for a two-level downward departure pursuant to U.S.S.G. § 5K1.1. Finally, paragraph 6(e) states that "[i]n the event [Mr. Calle] decides to provide substantial assistance ... in the investigation and prosecution of cases beyond the immediate matter numbered R–91–0274," the government may move for a greater reduction of sentence under Fed.R.Crim.Pro. 35. Clearly, Mr. Calle's implied right to decide whether to assist in any case other than R–91–0274 cannot be reconciled with his express duty to "truthfully disclose everything he knows."

Based on proffers made by the government, it appears that information provided by Mr. Calle was neither prompt, complete, nor wholly accurate. The government has stated that after the convictions of Ms. Taylor and Ms. Grisales, the defendant refused to cooperate further in the prosecution of Mr. Haynes and Ms. Richards unless his wife agreed to cooperate as well.

While the government apparently forgave this recalcitrance, the Court is not satisfied that this conditional assistance warrants a downward departure.

■ At Mr. Calle's first sentencing hearing, the government mentioned in passing a letter agreement with the defendant which *promised* a total recommendation of 4 levels under § 5K1.1 in exchange for his cooperation in the Haynes' and Richards' cases. It was only after the Court's inquiries into the circumstances surrounding the letter that the government produced a copy of the agreement. The agreement had been executed five months after Mr. Calle's plea, and a full two months before his sentencing. While the Court does not find any deliberate attempt on the part of the government to conceal its intended recommendation, it notes with dismay the obvious lack of concern for the role of the judiciary in sentencing. The original plea agreement provided that the government would, in its sole discretion, move for a further reduction of sentence *after* Mr. Calle's cooperation. In its letter agreement, the government *bound* itself to a further reduction, *before* Mr. Calle furnished the assistance. While the nondisclosure of such an agreement may not technically violate Fed.R.Crim.P. 11, such nondisclosure is clearly disfavored in this Circuit. *See United States v. Moore*, 931 F.2d 245, 249 (4th Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 171, 116 L.Ed.2d 134 (1991) (Rule 11(e)(2) "is properly read to mean that 'all material terms' (or material 'details' or 'elements') of the agreement must be disclosed."); *United States v. Guevara*, 949 F.2d 706, 707 (4th Cir.1991) (Wilkins, J., dissenting) ("When the government and a defendant enter into a plea agreement as a complete statement of their obligations, it may not be supplemented with unmentioned terms at a later date."). The government's need to make additional promises to secure Mr. Calle's cooperation

---

**9.** This injustice would be compounded by the disparity between the sentence received by Ms. Taylor and the sentence urged by the government for Ms. Grisales. As a primary goal of the guidelines under 28 U.S.C. § 991 is to insure

uniform treatment among those similarly situated, it would be unconscionable to permit the more culpable defendants to receive more lenient treatment than the minor participants without some compelling justification.

indicates that the cooperation was anything but complete and timely.

In addition, the government has recently informed the Court of statements made by Ms. Richards which, if true, suggest that the defendant's level of culpability was greater than previously imagined and that his statements regarding his own coercion of Ms. Grisales were untrue. The government has made no attempt to discredit these statements, and the Court is less than confident in the accuracy and completeness of Mr. Calle's assistance.

Finally the Court found that it would be highly inappropriate to permit the defendant to profit under the consideration of "risk to the defendant's family" under § 5K1.1(a)(4). In this case, the defendant willingly devastated his entire family by forcing his wife to participate in his illegal activities, and inducing her plea in complete disregard of the welfare of his children, merely to obtain a reduction in his own sentence. To say the least, the portion of his cooperation directed toward the conviction of Martha Grisales therefore does not inspire a discretionary reward.

Finding that the government's motion for downward departure · was not well grounded in · the enumerated factors of § 5K1.1, and that it offended any sense of proportional justice, the motion will be denied.

 While the parties have stipulated that no adjustment is appropriate for role in the offense, the Court is not bound by that stipulation. See Plea Agreement at 5(e); Fed.R.Crim.Pro. 11(e)(1)(B). In considering whether the facts of this case support an increase in the offense level under U.S.S.G. § 3B1.1, the Court is mindful of its obligation under U.S.S.G. § 1B1.8(a), and United States v. Malvito, 946 F.2d 1066 (4th Cir.1991) not to consider incriminating statements made by the defendant himself pursuant to his plea agreement. Even without the defendant's statements, however, the record in this case is replete with evidence that this defendant's role in the offense was significant enough to warrant an increase in the offense level.

Evidence adduced at the trial of Beatrice Taylor made it clear that Mr. Calle was in charge of numerous trips from New York to the Baltimore/Washington area which involved the transportation of cocaine. The statements of Ms. Grisales and Ms. Taylor to the presentence investigator, the Court, and others throughout the course of this case indicate that it was Mr. Calle who secured the cocaine, collected the money, and paid his underlings, including Ms. Taylor and Ms. Grisales, small amounts of compensation for each trip actually made. These statements were corroborated by Ms. Richards. In addition, there is ample evidence from which to conclude that Mr. Calle recruited accomplices through the use of coercion and deception. Recruitment of accomplices is made specifically relevant to a § 3B1.1 increase by Application Note 3.

 In determining the number of participants in a criminal activity, the defendant himself may be counted along with his accomplices. See United States v. Preakos, 907 F.2d 7, 10 (1st Cir.1990). The criminal activity in which Mr. Calle participated therefore involved five or more participants: the defendant himself, Martha Grisales, Beatrice Taylor, Bobby Haynes, and Gloria Richards. It is clear that Mr. Calle's role was at least that of a manager or supervisor. Without more information as to the scope of the drug operation as a whole, however, there is not enough evidence to support a finding that he was a "leader or organizer" as that term is used in the Sentencing Guidelines. Therefore the Court finds that a three-level increase under § 3B1.1(b) was warranted.

From the base offense level of 32, the Court will subtract two levels for acceptance of responsibility, and add three levels based on Mr. Calle's aggravating role in the offense. The Court thus arrives at an offense level of 33, or a range of 151–188 months. In light of the assistance the defendant provided, and the government's recommendation that the Court impose a sentence at the low end of the applicable guideline range, the Court will impose a sentence of 151 months imprisonment, to

be followed by the mandated term of 5 years supervised release.

IT IS SO ORDERED.