# United States Court of Appeals
## For the First Circuit

No. 01-2570

UNITED STATES OF AMERICA,

Appellee,

v.

JOHN ANDREW AHLERS,

Defendant, Appellant.

No. 01-2571

UNITED STATES OF AMERICA,

Appellee,

v.

PETER JORDAN AHLERS,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Selya, Circuit Judge,

Gibson* and Greenberg,** Senior Circuit Judges.

Gordon R. Blakeney, Jr. for appellant John Andrew Ahlers.
David Kreisler, with whom Daniel G. Lilley Law Offices, P.A.,
was on brief, for appellant Peter Jordan Ahlers.

     Margaret D. McGaughey, Assistant United States Attorney
(Appellate Chief), with whom Paula D. Silsby, United States
Attorney, was on brief, for appellee.

————————————————

September 30, 2002

————————————————

_____
*Of the Eighth Circuit, sitting by designation.
**Of the Third Circuit, sitting by designation.

**SELYA**, <u>Circuit Judge</u>.  After pleading guilty to crimes that carry a statutorily imposed minimum sentence, John Andrew Ahlers and Peter Jordan Ahlers asked the district court to consider departing below that minimum based on grounds unrelated to their substantial assistance to the authorities.  The district court ruled that it lacked the authority, under 18 U.S.C. § 3553(e), to honor this request.  Armed with nothing but the sharp point of statutory language, the Ahlers brothers present us with the direct question of whether a government motion for a downward departure to reflect a defendant's substantial assistance removes the constraint of a statutory minimum sentence and opens the door for consideration of departure grounds unrelated to substantial assistance.  We hold that a substantial assistance motion does not have so liberating an effect.  Accordingly, we affirm the district court's assessment of the limits that Congress placed upon its sentencing authority under 18 U.S.C. § 3553(e).

## I.  BACKGROUND

During the 1990s, a drug kingpin, Robert Shimek, directed a large-scale illicit enterprise reaching from Canada to New Orleans.  Typically, Shimek's henchmen would deposit illegal drugs - marijuana, ecstacy, hashish, LSD, and the like - at remote locations in Canada (usually near Vermont or Maine); runners would smuggle the contraband in backpacks across the border and return with the proceeds of previously consummated drug sales; their accomplices in the United States would repackage the drugs for

distribution; and other participants would market them at music concerts and elsewhere.

For a period of roughly six months, the Ahlers brothers worked the channels of this underground empire, driving Shimek to various concerts, acting as couriers, and selling drugs. In October of 1997, their swift chariot spun off the fast track: a Florida state trooper apprehended them driving a vehicle that contained two large nitrous oxide tanks, sheets of LSD, marijuana, and sundry drug paraphernalia. They were found guilty of state drug-trafficking charges and sentenced to serve 60 days in jail (with additional time suspended). They maintain, with considerable support in the record, that upon their release they ended their intercourse with Shimek, kept to the straight and narrow, and pursued exemplary lifestyles.

Notwithstanding this about-face, the past came back to haunt them. On June 21, 2000, a federal grand jury handed up a three-count indictment arising out of their participation in Shimek's network. Count 1 alleged that the brothers conspired to distribute, and to possess with intent to distribute, various controlled substances. Count 2 alleged that they conspired to import various controlled substances into the United States. Count 3 alleged that they possessed various controlled substances with intent to distribute. See 21 U.S.C. §§ 841(a)-(b), 846, 952(a)-(b), 960(a)-(b), 963. On February 7, 2001, both men pleaded guilty to count 1 of the indictment.

-4-

After tabulating all the drugs associated with the offense of conviction and converting them to their marijuana equivalent, see USSG §2D1.1, the probation department compiled a presentence investigation report (PSI Report) that attributed a total of 267 kilograms of marijuana equivalent to the defendants. Crediting each of them with a three-level downward dip for acceptance of responsibility, USSG §3E1.1, the PSI Report proposed an adjusted offense level of 23. This produced a guideline sentencing range (GSR) of 51-63 months for John Ahlers (who was ranked in criminal history category II) and 57-71 months for Peter Ahlers (who was ranked in criminal history category III). Finally, the PSI Report noted that, by statute, the offense of conviction called for a mandatory minimum sentence of 60 months. See 21 U.S.C. § 841(b)(1)(B).

At the disposition hearing, the government asked the court to depart downward to reflect the Ahlers' substantial assistance in the investigation of others. See 18 U.S.C. § 3553(e); USSG §5K1.1. At the same time, the Ahlers cross-moved for additional departures based on extraordinary presentence rehabilitation. See United States v. Craven, 239 F.3d 91, 99 (1st Cir. 2001) (discussing such departures); United States v. Sklar, 920 F.2d 107, 115-17 (1st Cir. 1990) (similar); see generally USSG §5K2.0. Pursuant to the plea agreement, the district court dismissed counts 2 and 3 of the indictment. It then granted each defendant a 21-month downward departure for substantial assistance, but stopped there. The court took the position that it did not

-5-

have any authority to further depreciate the statutory minimum sentence based on a ground (like extraordinary presentence rehabilitation) unrelated to the defendants' substantial assistance.

Each defendant appeals from his 39-month incarcerative sentence, challenging the "lack of authority" holding. We consolidated the appeals for briefing and argument.

## II.  ANALYSIS

As said, the sole issue on appeal concerns the court's power to depart below the statutory minimum sentence on a ground unrelated to substantial assistance.  Appellate jurisdiction from a denial of a departure request attaches when the sentencing court bases its action on a perception that it lacks the legal authority to grant the request.  See United States v. Pierro, 32 F.3d 611, 619 (1st Cir. 1994); United States v. Mariano, 983 F.2d 1150, 1153-54 (1st Cir. 1993).  Because the court below premised its refusal to depart on such a perceived lack of authority, we have jurisdiction to hear and determine these appeals.  Moreover, the appeals hinge on a quintessentially legal judgment, thus engendering plenary review.  Mariano, 983 F.2d at 1154.

Whether there is anything of substance to be decided is another matter.  Citing United States v. Chestna, 962 F.2d 103 (1st Cir. 1992) (per curiam), the government hypothesizes that the issue raised in these appeals is barred by the doctrine of stare decisis. We start by testing that hypothesis.

-6-

In _Chestna_, the government moved pursuant to 18 U.S.C. § 3553(e) and USSG §5K1.1 for a downward departure reflecting the defendant's substantial assistance.[1]  962 F.2d at 104.  The defendant simultaneously moved for a downward departure based on her unique family responsibilities.  _Id._ at 104-05.  She contended that the government's motion for a substantial assistance departure opened the door for consideration of other factors in determining the degree of the departure.  _Id._ at 105.  We upheld the district court's rejection of her claim.  _Id._ at 106 (stating that any additional factor not specifically listed in section 5K1.1 "necessarily would relate to the substance of the initiating motion, i.e., a defendant's substantial assistance," in order to affect the extent of the departure).

Contrary to the government's importunings, our decision in _Chestna_ does not conclusively refute the Ahlers' argument.  In that case, the defendant posited that a sentencing court could take into account a factor unrelated to substantial assistance - family circumstances - when determining the extent of such a departure. The Ahlers, however, did not ask the lower court to consider an extraneous factor (in their case, rehabilitation) as a basis for enlarging a substantial assistance departure, but, rather, proffered that factor as a separate and distinct ground for

---

[1]In 18 U.S.C. § 3553(e), quoted _infra_, Congress ordained that a substantial assistance departure could trump a statutorily imposed mandatory minimum sentence.  USSG §5K1.1 is the principal guideline adopted by the Sentencing Commission to aid district courts in fashioning substantial assistance departures.

-7-

departure. This is an issue that we did not reach in Chestna. See id. at 107. We reach it here.

As framed, the Ahlers' argument relies on their interpretation of 18 U.S.C. § 3553(e). That statute reads:

> **Limited authority to impose a sentence below a statutory minimum**.-Upon motion from the Government, the court shall have the authority to impose a sentence below a level established by statute as minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense. Such sentence shall be imposed in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code.

18 U.S.C. § 3553(e).

The Ahlers asseverate that when a sentencing court grants a government motion for a substantial assistance departure, the first textual sentence of this provision renders nugatory any statutory minimum penal sentence, and that the second textual sentence restores the court's full powers under the sentencing guidelines to depart on other grounds (as if no mandatory minimum existed). In the Ahlers' view, this means that the granting of a government motion pursuant to section 3553(e) invariably authorizes the sentencing court to impose a sentence below an otherwise applicable statutory mandatory minimum based not merely on substantial assistance but also on any other ground recognized under the guidelines. Thus, their thesis runs, the sentencing court should have entertained departure requests based on extraordinary presentence rehabilitation.

-8-

The force of this argument depends on the meaning of the words that Congress wrote. To determine that meaning, we start with the language of the statute. United States v. Charles George Trucking Co., 823 F.2d 685, 688 (1st Cir. 1987). "In searching a statute's text for a pellucid expression of congressional intent, we . . . make a commonsense concession that meaning can only be ascribed to statutory language if that language is taken in context." Riva v. Commonwealth of Mass., 61 F.3d 1003, 1007 (1st Cir. 1995). We presume that Congress intended all words and provisions contained within a statute to have meaning and effect, and we will not readily adopt any construction that renders any such words or phrases meaningless, redundant, or superfluous. Lopez-Soto v. Hawayek, 175 F.3d 170, 173 (1st Cir. 1999).

Based on the foregoing, it is apparent that our move from the general to the specific necessitates establishing the context from which the particular statute speaks. Riva, 61 F.3d at 1007. Through the enactment of 18 U.S.C. § 3553, Congress directed the federal courts as to how they should carry out their sentencing responsibilities in criminal cases. Subsections (a) through (d) establish the criteria and procedures to which a court must look in imposing sentence. Subsections (e) and (f) deal with a court's power to afford relief from statutorily imposed minimum sentences. Comparing the form and function of these latter two subsections should provide a panoramic view of the exceptions that Congress wished to create to the otherwise mandatory imposition of statutory minimum sentences.

This approach requires that we compare the language of section 3553(e) (the provision at issue in this case) with the language of section 3553(f) (the only other proviso in section 3553 dealing with mandatory minimum sentences). Doing so, the conclusion is inescapable that the language Congress used in these two sections differs radically - and that difference hardly can be dismissed as a mere fortuity.

18 U.S.C. § 3553(f) - the so-called "safety valve" provision - reads as follows:

> **Limitation on applicability of statutory minimums in certain cases**.-Notwithstanding any other provision of law, in the case of an offense under [specified sections of the criminal code not relevant here], the court shall impose a sentence pursuant to guidelines promulgated by the United States Sentencing Commission under Section 994 of title 28 without regard to any statutory minimum sentence, if the court finds at sentencing, after the Government has been afforded the opportunity to make a recommendation, that -
> (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;
> (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
> (3) the offense did not result in death or serious bodily injury to any person;
> (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and
> (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or

offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C. § 3553(f).[2]  In United States v. Ortiz-Santiago, 211 F.3d 146 (1st Cir. 2000), we elaborated on the form and function of this provision.  We recognized that Congress enacted the safety valve to mitigate the harsh effects of mandatory minimum sentences on certain first-time offenders who played relatively minor roles in drug-trafficking schemes.  Id. at 150.

The clear and precise language that Congress used to achieve this objective is striking.  Congress unequivocally stated that as long as a certain set of conditions were met, courts should "[dis]regard . . . any statutory minimum sentence" and sentence in accordance with the sentencing guidelines, "[n]otwithstanding any other provision of law . . . ."  18 U.S.C. § 3553(f).  Thus, section 3553(f) demonstrates Congress's ability to deploy unambiguous statutory language when it intends to authorize sentencing judges to ignore the limitations imposed by statutory minimum sentences and treat a "mandatory minimum" case like any other.

Section 3553(e) speaks in much more circumspect terms. The first textual sentence presumes the applicability of a

_____

[2]It is undisputed that neither of the defendants in this case qualifies for the safety valve.

statutorily established minimum penal sentence, ascribes the force of law to that sentence, and grants a sentencing court discretionary authority to impose a lesser sentence - but conditions that authority upon the filing of a government motion. Significantly, that textual sentence limits the authority to depart to the extent necessary "so as to reflect a defendant's substantial assistance . . . ." 18 U.S.C. § 3553(e). The second textual sentence of section 3553(e) - the sentence upon which the Ahlers chiefly rely - modifies its subject ("sentence") with the adjective "such," thus referring back to the penal sentence contemplated in the first textual sentence. Unlike section 3553(f) - under which the mandatory minimum is to be <u>disregarded</u> once certain conditions are met - section 3553(e) retains the mandatory minimum as a reference point for a specific, carefully circumscribed type of departure.[3] <u>See</u> <u>United States</u> v. <u>Aponte</u>, 36 F.3d 1050, 1051 (11th Cir. 1994). The sharp divergence between these regimes leads inexorably to the conclusion that Congress had different plans in mind for the operation and effect of the two provisions.

---

[3]In this sense, section 3553(e) provides the only authority for a court to sentence below a statutory minimum. After all, there is no statutory minimum applicable to a defendant who reaches the safe harbor of the safety valve provision. <u>See</u> <u>Ortiz-Santiago</u>, 211 F.3d at 150. This demonstrates a fundamental difference between subsections (e) and (f): 18 U.S.C. § 3553(e) recognizes and respects the sentence "established by statute as [a] minimum sentence" and does not explicitly confer upon sentencing courts a power to disregard it (instead granting limited authority to sentence below it). In marked contrast, 18 U.S.C. § 3553(f) directs courts to sentence "without regard to any statutory minimum sentence," thus completely removing the erstwhile mandatory minimum from the sentencing calculus.

The Ahlers ignore this difference, modeling their rendition of section 3553(e) after the actual operation of section 3553(f). But they offer no explanation as to why two provisions with such different architecture and such different goals should be deemed to march in lockstep. It is accepted lore that when Congress uses certain words in one part of a statute, but omits them in another, an inquiring court should presume that this differential draftsmanship was deliberate. Lopez-Soto, 175 F.3d at 173. So it is here.

We think that the unique language in which Congress couched section 3553(e) manifests an obvious purpose: once the government moves for a sentence below the statutory minimum pursuant to section 3553(e), the court has discretion to sentence below that minimum in a manner that reflects the nature and extent of the substantial assistance provided by the defendant - no more, no less. This construction is supported most clearly in the text by the placement of the limiting phrase "so as to reflect a defendant's substantial assistance," which is attached to the main clause that grants the court its authority to impose a sentence below the statutory minimum. From this placement, the only logical conclusion is that the authority granted is limited thereby.[4]

_____

[4]The Ahlers' reading of this sentence - that it completely frees a court from the restraints of a statutory minimum penal sentence once the court grants a government motion for a substantial assistance departure - treats relief from a statutory minimum as a quid pro quo when the government is satisfied with the assistance. The Ahlers would have us interpret the sentence as if it read: "Upon motion of the government reflecting a defendant's substantial assistance . . . , the court shall have the authority

Thus, the statute opens the door for a departure below the otherwise applicable mandatory minimum - but only those reasons related to the nature and extent of the defendant's substantial assistance can figure into the ensuing sentencing calculus.

The case law, for the most part, is fully in accord with this construction. See, e.g., United States v. Rabins, 63 F.3d 721, 727 (8th Cir. 1995); United States v. Thomas, 11 F.3d 732, 736-37 (7th Cir. 1993); United States v. Campbell, 995 F.2d 173, 175 (10th Cir. 1993); United States v. Valente, 961 F.2d 133, 134-35 (9th Cir. 1992); United States v. Snelling, 961 F.2d 93, 97 (6th Cir. 1991). The Ahlers dismiss these decisions out of hand, noting that most of the courts in question have not been confronted with the precise statutory construction argument that is proffered here. We are convinced, however, that those courts have reached the correct conclusion and that the Ahlers' argument, though ingenious, does not call that conclusion into serious question.

The Ahlers counter-attack on four fronts. First, citing United States v. Calle, 796 F. Supp. 853, 860-61 (D. Md. 1992), they insist that our reading of section 3553(e) drains the statute's second textual sentence of all meaning. To avoid that result, they read that sentence to restore what they call the district court's "full guideline powers" and to authorize

_____

to impose a sentence below a level established by statute." This reading contradicts Congress's placement of the limiting phrase just discussed.

departures based on any and all of the sentencing guidelines and policy statements.

This construct overlooks the obvious: all federal courts are full guidelines courts by virtue of section 3553(b), and the sentencing guidelines fully incorporate statutorily imposed mandatory minimum sentences through the mechanism of USSG §5G1.1.[5] Thus, the determination of a guideline sentence occurs in a single coherent process of which USSG §5G1.1 is a part. Viewed in that light, section 3553(e)'s second textual sentence restricts the court's reference to those guidelines and policy statements that bear directly upon the desirability and extent of a substantial assistance departure. In our opinion, that is why Congress used the adjective "such" to modify the subject ("sentence") of the second textual sentence. That usage plainly refers back to the penal sentence mentioned in the previous text, that is, a sentence fashioned "so as to reflect the defendant's substantial assistance." The Calle court's contrary reading of the statute is unconvincing.

Next, the Ahlers point out that some parts of section 3553 refer to specific subsections of 28 U.S.C. § 994, whereas

---

[5]This guideline "describes how the statutorily authorized maximum sentence, or a statutorily required minimum sentence, may affect the determination of a sentence under the guidelines." USSG §5G1.1, cmt. Pertinently, it provides that "[w]here a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence." Id. §5G1.1(b). When the applicable GSR encompasses both a statutorily required minimum sentence and a statutory maximum, a court can impose any sentence between those two benchmarks. Id. §5G1.1(c).

section 3553(e) does not.  From this circumstance, they reason that if Congress had intended the second sentence of section 3553(e) to direct courts only to those guideline provisions pertaining to a defendant's substantial assistance, it would have inserted a specific reference to 28 U.S.C. § 994(n) (the provision directing the Sentencing Commission to promulgate guidelines and policy statements pertaining to substantial assistance).  This argument reads too much into our interpretation of section 3553(e).

In Mariano, we explained that although a sentencing court's assessment of the substantiality of a defendant's assistance should give special weight to the factors enumerated in USSG §5K1.1,[6] the "list is representative rather than exclusive." 983 F.2d at 1156.  Thus, while a sentencing court is not free to "consider any datum it pleases" when passing upon a motion for a substantial assistance departure, the court may consider mitigating factors, whether or not specified in section 5K1.1, "to the extent that they can fairly be said to touch upon the degree, efficacy, timeliness, and circumstances of a defendant's cooperation." Id. Congress's decision not to cite to specific subsections of 28 U.S.C. § 994 dovetails perfectly with this analysis:  it is

---

[6]Section 5K1.1 is a guideline provision that traces its roots directly to 28 U.S.C. § 994(n).  See Mariano, 983 F.2d at 1154-55. The factors that it enumerates are the court's evaluation of the significance and usefulness of the defendant's assistance (giving particular deference to the government's evaluation of that assistance); the reliability of any information or testimony given by the defendant; the timeliness, nature, and extent of the assistance; and any danger to which the defendant or members of his family was exposed as a result of the assistance.  USSG §5K1.1(a)(1)-(5).

-16-

reasonable to assume, and adequately plausible for our purposes, that Congress deliberately refrained from citing specific subsections of 28 U.S.C. § 994 so as not to narrow this universe of mitigating factors. Put another way, once the government has moved for a departure pursuant to section 3553(e), a sentencing court, following Congress's direction, should review all the guidelines and policy statements promulgated by the Sentencing Commission under 28 U.S.C. § 994 in order to determine an appropriate sentence that reflects the nature and extent of the defendant's substantial assistance.

The Ahlers also suggest that allowing consideration of factors unrelated to substantial assistance will heighten a defendant's incentive to cooperate with the authorities and thus promote the core purpose of section 3553(e). This suggestion is misdirected. Congress's intent was not to create the widest possible incentives for cooperation, but, rather, to balance a defendant's incentives with the benefits accruing to the government. See Mariano, 983 F.2d at 1155. To achieve this balance, Congress chose to enact statutory minimum sentences and allow only one way out: cooperation with law enforcement. See 140 Cong. Rec. S12004 (daily ed. Aug. 18, 1994) (statement of Sen. Hatch). Reworking this balance would not only undermine legislative intent but also threaten the integrity of the system of mandatory minimum sentencing so prized by Congress.

The Ahlers have a fallback position: they strive to convince us that the relevant statutory language, if not clearly

favorable to them, is at least ambiguous and thus subject to a generous construction under the rule of lenity. We are not persuaded.

In a criminal case, the rule of lenity requires a court to resolve true statutory uncertainty in the accused's favor. Bifulco v. United States, 447 U.S. 381, 387 (1980); United States v. Nippon Paper Indus. Co., 109 F.3d 1, 7 (1st Cir. 1997). But the sine qua non for the rule's application is genuine ambiguity, and a statute is not ambiguous simply because litigants (or even an occasional court) question its interpretation. Nippon Paper, 109 F.3d at 8. It is only when no reasonably clear meaning can be gleaned from the text of a statute, leaving courts to guess at what Congress intended, that the rule of lenity comes into play. Id.

In this case, the statute at issue - 18 U.S.C. § 3553(e) - has a clear and plausible meaning. There is no principled way in which it can be labeled ambiguous. Consequently, the rule of lenity does not apply.

That ends the matter. Our reading of section 3553(e) is a commonsense interpretation that comports with the language, structure, and evident purpose of the law. It is consistent with the conclusions of other appellate courts that have considered the issue, e.g., Rabins, 63 F.3d at 727; Campbell, 995 F.2d at 175, and none of the Ahlers' objections cast doubt upon it. We therefore hold that section 3553(e) authorizes a court, once the government moves pursuant thereto, to sentence a defendant below a statutorily

imposed minimum but only to an extent that reflects the court's assessment of the defendant's substantial assistance.

## III. CONCLUSION

We need go no further. Even though we admire the Ahlers' repentance and efforts at reform, we cannot reward that change of course in the way that the Ahlers suggest. Because the court below correctly apprehended that it lacked legal authority to grant the Ahlers' motions for additional downward departures, we affirm its sentencing determinations.

**Affirmed**.