FILED
United States Court of Appeals
Tenth Circuit

June 24, 2008

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA

      Plaintiff-Appellee,

v.

A.B.,*

      Defendant-Appellant.

No. 06-2164

---

**Appeal from the United States District Court
for the District of New Mexico
(D.C. No. CR-05-1161-BB)**

---

Joseph W. Gandert, Assistant Federal Public Defender (John Van Butcher, Assistant Federal Public Defender, on the brief), Albuquerque, New Mexico, for Defendant-Appellant.

Sharon R. Kimball, Assistant United States Attorney (David C. Iglesias, United States Attorney, with her on the brief), Albuquerque, New Mexico, for Plaintiff-Appellee.

---

Before **HENRY**, Chief Judge, **HARTZ** and **HOLMES**, Circuit Judges.

---

**HOLMES**, Circuit Judge

---

    *     Because of safety concerns arising from defendant-appellant's cooperation in the investigation and prosecution of others, we granted defendant-appellant's motion to file his brief under seal and entered a provisional order sealing the case. Although we have elected to resolve this case in a published opinion, we refer to him by non-identifying initials to aid in preserving his anonymity.

_____

A.B. pleaded guilty to possessing more than fifty grams of methamphetamine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), and possessing a firearm in connection with a drug trafficking crime, in violation of 18 U.S.C. § 924(c). After the district court sentenced A.B. to 117 months' imprisonment, he appealed claiming that the district court failed to consider his non-frivolous arguments under 18 U.S.C. § 3553(a) and that under those factors he was entitled to a lesser sentence. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

## I.  BACKGROUND

During a consensual search of A.B.'s vehicle at a traffic stop, officers discovered a small amount of what was later confirmed to be methamphetamine and a loaded .357 caliber handgun. The discovery led to A.B.'s arrest. Law enforcement conducted subsequent searches of his vehicle and found approximately six ounces of methamphetamine. A.B. subsequently pleaded guilty to a two-count indictment charging, respectively, violations of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) (Count I), and 18 U.S.C. § 924(c) (Count II).

Both crimes provided for a mandatory minimum punishment of sixty months (i.e., five years). Focusing on the drug offense in establishing the sentencing range under the United States Sentencing Guidelines,[1] A.B.'s Presentence Investigative Report ("PSR")

_____

[1]	With regard to a statute that prescribes a consecutive mandatory minimum sentence, like 18 U.S.C. § 924(c), the Guidelines specify that the sentence "shall be

(continued...)

2

asserted a base offense level of thirty-two, and recommended a three-level downward adjustment for acceptance of responsibility, resulting in a total offense level of twenty-nine. Applying the criminal history category of II, the PSR calculated his Guidelines range for Count I to be 97 to 121 months. For Count II, the PSR noted the mandatory five-year sentence that must be served consecutively to the sentence on Count I. *See* 18 U.S.C. § 924(c)(1)(A)(i) and (D)(ii).

The government filed a motion for a downward departure pursuant to Guidelines § 5K1.1 and 18 U.S.C. § 3553(e) for A.B.'s cooperation with the government's investigation and his willingness to testify. The government acknowledged that his cooperation placed A.B. at risk. Claiming that he was entitled to a more lenient sentence because of personal problems, in addition to his cooperation with the government, A.B. filed a motion in support of the government's motion in which he requested a total sentence of sixty months.

At the sentencing hearing, the district court expressly acknowledged having reviewed A.B.'s sentencing memorandum. *See* R., Vol. III, Tr. at 3 (Transcript of Sentencing Hearing, dated May 24, 2006). It then allowed A.B. (through counsel and personally) and the government to state their positions. A.B. said that he believed a sixty-

---

[1](...continued)
determined by that statute and imposed independently." U.S. Sentencing Guidelines Manual § 5G1.2(a) & cmt. n.2 (2004); *see id.* § 3D1.1(b) & cmt. n.1 (excluding from the grouping procedures that otherwise would apply to sentencing computations those counts involving consecutive mandatory minimums). The district court used the 2004 version of the Guidelines in sentencing A.B. The parties raise no objections on appeal concerning that decision. Accordingly, we refer to the 2004 version of the Guidelines in our analysis.

month sentence would be appropriate. The government objected that, given the mandatory sixty-month consecutive sentence for the firearm count, A.B.'s suggested sentence would effectively relieve him of any punishment on the drug count. The district court responded:

> Well, as you know, [A.B.], the consequences in the federal system for dealing in narcotics are extremely severe. I'm sure you and [your counsel] have talked about that at some length.
>
> . . . .
>
> Having a loaded firearm makes that situation much more severe, as it should. I'm going to take account of both of those. I'm also going to take account of your cooperation with the Government, the fact that you have put yourself at risk, and indeed will have a difficult time living around the Albuquerque, Bernalillo area in the future.

R., Vol. III, Tr. at 11-12 (speaker designation omitted).

Before imposing sentence, the district court declared that it had "reviewed the presentence report factual findings and considered the Sentencing Guideline applications, as well as the factors of 18 United States Code, Section 3553." *Id.* at 12. The district court accepted the Guidelines calculation in the PSR for Count I, which yielded a Guidelines range of 97 to 121 months. Granting the government's § 3553(e) motion, the district court applied a five offense-level downward departure which resulted in an offense level of twenty-four and a criminal history category II, with a corresponding Guidelines range of fifty-seven to seventy-one months. The district court sentenced A.B. to fifty-seven months on Count I and imposed the mandatory sixty-month sentence on

Count II to run consecutive to the Count I sentence. Further, the district court urged A.B. to participate in a 500-hour drug and alcohol treatment plan. A.B. raised no contemporaneous objection to the district court's sentencing procedures.

The district court entered judgment, and A.B. timely appealed.

## II. DISCUSSION

We review A.B.'s sentence for reasonableness, giving deference to the district court under "the familiar abuse-of-discretion standard." *Gall v. United States*, 128 S. Ct. 586, 594 (2007); *see United States v. Smart*, 518 F.3d 800, 805 (10th Cir. 2008) (noting that it is now "well settled that we review a district court's sentencing decisions solely for abuse of discretion"). Reasonableness "has both procedural and substantive components." *United States v. Atencio*, 476 F.3d 1099, 1102 (10th Cir. 2007), *overruled in part on other grounds by Irizarry v. United States,* __ S. Ct. __, 2008 WL 2369164, at *4 n.1, *6 (2008); *see Gall*, 128 S. Ct. at 597 (noting that a reviewing court "must first ensure that the district court committed no significant procedural error" and then it should "consider the substantive reasonableness of the sentence").

The procedural component relates to the manner in which the district court calculated and explained the sentence. *See Gall*, 128 S. Ct. at 597 (treating "failing to calculate (or improperly calculating) the Guidelines range," "failing to consider the § 3553(a) factors," and "failing to adequately explain the chosen sentence" as examples of "significant procedural error"); *United States v. Romero*, 491 F.3d 1173, 1176 (10th Cir. 2007) (treating defendant's allegation that the district court failed to explain its reasons

5

for rejecting an argument for a below-Guidelines sentence as a claim of procedural

unreasonableness). The substantive component relates to the length of the sentence: "In

evaluating the substantive reasonableness of a sentence, we ask whether the length of the

sentence is reasonable considering the statutory factors delineated in 18 U.S.C. §

3553(a)." *United States v. Hamilton*, 510 F.3d 1209, 1217-18 (10th Cir. 2007); *see*

*Atencio*, 476 F.3d at 1102 ("A substantively reasonable sentence ultimately reflects the

gravity of the crime and the § 3553(a) factors as applied to the case.").

On appeal, A.B. does not challenge the substantive reasonableness of his

sentence.[2] Instead, he focuses on whether the district court failed to consider the 18

U.S.C. § 3553(a) factors. This procedural objection arises in connection with two distinct

arguments.

First, A.B. argues that, even after departing downward from the Guidelines range

---

[2]    A.B. intimated at oral argument that he also was challenging the substantive reasonableness of his sentence. However, there is no indication in the record that he ever made that contention at an earlier point in this appeal. Specifically, there is no indication in the appellate filings that A.B. ever directly challenged the length of his sentence, as opposed to the district court's procedural approach that concluded with the imposition of his particular sentence. Importantly, his briefs evince only a procedural challenge to his sentence. *See, e.g.*, Aplt. Op. Br. at 1 (framing the issue on appeal as whether "the district court impose[d] an unreasonable sentence when it failed to consider valid reasons for a below-guidelines sentence under 18 U.S.C. § 3553(a), and sentenced [A.B.] to 117 months in prison?"); Aplt. Reply Br. at 2 ("The real issue in this appeal is the district court's failure to accord [A.B.] a fair sentencing proceeding when it wholly failed to consider his valid grounds for a lower sentence."). Accordingly, A.B. has forfeited any challenge to the substantive reasonableness of his sentence and we decline to consider that issue. *See, e.g.*, *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief.").

6

on substantial assistance grounds to a point below the mandatory minimum sentence, the district court was obliged to consider his § 3553(a) factors in assessing the appropriateness of a downward variance.[3] If the district court had done so, reasons A.B., it could have used those factors to vary downward even further to reach (or at least approach) his desired sixty-month total sentence for both counts. *See, e.g.*, Aplt. Op. Br. at 16-17 ("The fact that a court has engaged in a [Guidelines] § 5K1.1 departure cannot foreclose its separate consideration of other factors in setting a sentence below the substantial assistance departure the court may have already determined.").

Second, A.B. alternatively contends that the district court should have *first* considered the § 3553(a) factors in determining whether to vary downward from the advisory Guidelines range, and *then* granted a substantial assistance downward departure. Under this approach, says A.B., the district court could have used the § 3553(a) factors to vary downward from the advisory Guidelines range to the sixty-month mandatory minimum sentence, and then departed downward from that mandatory minimum to arrive at a sentence somewhere near his desired total sentence of sixty-months. *See, e.g.*, *id.* at 23-24 ("If the district court had properly considered the mitigating factors urged by [A.B.], it could have reduced his drug offense sentence from 97 months to a lesser

---

[3]  In *Atencio*, we "clarif[ied] that when a court reaches a sentence above or below the recommended Guidelines range through application of Chapters Four or Five of the Sentencing Guidelines, the resulting increase or decrease is referred to as a 'departure.' When a court enhances or detracts from the recommended range through application of § 3553(a) factors, however, the increase or decrease is called a 'variance.'" 476 F.3d at 1101 n.1.

sentence at or near the 60 month mandatory minimum. It could have then . . . engaged in

the 40 month reduction it deemed appropriate to reflect his substantial assistance to the

government.")

## A.    Standard of Review

A.B. did not challenge the district court's sentencing procedure at his sentencing.

Accordingly, we analyze A.B.'s two arguments under the plain error standard.[4] *See*

---

[4]    In his reply brief, A.B. contends that we should not apply plain error to his first argument. His first argument makes it necessary for us to revisit below our apparently contrary and controlling holding in *United States v. Campbell*, 995 F.2d 173 (10th Cir. 1993). A.B. reasons that the district court could have responded to his proferred § 3553(a) factors without using the methodology reflected in the first argument. Specifically, A.B. maintains that the district court could have imposed the desired reduced sentence under the alternative methodology of his second argument (i.e, by first varying downward to the sixty-month mandatory minimum and then departing downward for substantial assistance). Accordingly, says A.B., there was no real necessity for him to assert his first argument before the district court and, more specifically, to raise any contentions concerning the purported abrogation of *Campbell*. In short, reasons A.B., his first argument and *Campbell*-related contentions only became "relevant on appeal." Aplt. Reply Br. at 12.

A.B.'s standard-of-review contention is wholly without merit. A.B. was obliged to inform the district court of all of the theories under which he claimed an entitlement to relief, in order to preserve those theories for appellate review. We have repeatedly declined to allow parties to assert for the first time on appeal legal theories not raised before the district court, even when they fall under the same general rubric as an argument presented to the district court. *See, e.g.*, *United States v. Buonocore*, 416 F.3d 1124, 1128 (10th Cir. 2005) ("In general, this court will not consider a theory on appeal not raised or ruled on below."); *United States v. Anderson*, 374 F.3d 955, 958 (10th Cir. 2004) ("This is not a novel concept. We have held . . . that a party may not raise on appeal specific theories he did not present before the district judge.").

Not only did A.B. not advance the first argument before the district court, he did not even specifically advance the second. A.B. simply discussed certain § 3553(a) factors and his law enforcement cooperation and then—without offering the district court

(continued...)

8

*Romero*, 491 F.3d at 1177-78 (alleviating "confusion" over the "standard of review for unpreserved challenges to the method by which the district court arrived at a sentence" by concluding that where a defendant "did not object on procedural grounds under § 3553(a) or (c) after the district court imposed his sentence, he has forfeited his right to appeal this issue and our review is only for plain error").

Under the plain error standard, A.B. "'must show: (1) an error, (2) that is plain, which means clear or obvious under current law, and (3) that affects substantial rights. If he satisfies these criteria, this Court may exercise discretion to correct the error if it seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *United States v. Goode*, 483 F.3d 676, 681 (10th Cir. 2007) (quoting *United States v. Kimler*, 335 F.3d 1132, 1141 (10th Cir. 2003)). In this case, we need go no further than the first prong of the analysis. *See, e.g.*, *United States v. Jarrillo-Luna*, 478 F.3d 1226, 1229 (10th Cir. 2007) ("[W]e need not look past the first prong of plain error review

---

[4](...continued)
any guidance on how to provide the relief—asked for a total sixty-month sentence. *See, e.g.*, R., Vol. I, Doc. 30, at 4 ("Thus, in light of his cooperation, the § 3553(a) factors and examining the guidance of § 5K1.1 . . . a sentence of sixty (60) months furthers the sentencing goals.") (Sealed Mem. in Supp. of Govt. Mot. for Downward Departure, dated May 17, 2006). That approach will not do. More fundamentally, A.B. was obliged to take exception at the sentencing hearing to any perceived error in the district court's procedure, including its alleged failure to consider § 3553(a) factors after it decided to depart downward from the mandatory minimum for substantial assistance under § 3553(e). A.B. failed to do this. Accordingly, the plain error standard governs our review of A.B.'s first argument, as well as his second.

9

because the district court committed no error."). We address the two arguments in turn.[5]

**Use of § 3553(a) Factors Below the Mandatory Minimum Sentence**

A.B. argues that his 117-month sentence is unreasonable because the district court failed to consider the § 3553(a) factors in determining whether to grant a downward variance after it granted the government's motion for a substantial assistance downward departure pursuant to § 3553(e) and U.S.S.G. § 5K1.1. Assuming *arguendo* that A.B.'s factual premise is correct (i.e., the district court did not consider the § 3553(a) factors after departing downward for substantial assistance), we still conclude that the district court did not err. As a matter of law, the district court was not authorized here to consider factors other than substantial assistance in sentencing below the statutory minimum.

Both of the offenses to which A.B. pleaded guilty involve mandatory minimum sentences. Under § 841(b)(1)(B), the drug count carries a sixty-month mandatory minimum term of imprisonment. The firearm count also carries a mandatory sixty-month term of imprisonment and must run consecutive to the drug count. 18 U.S.C. §

---

[5] During oral argument, the government maintained that we need not reach the first argument because it is clear from the record that the district court considered the § 3553(a) factors in determining A.B.'s sentence. As noted in Section II.C, we agree that the district court considered the § 3553(a) factors. But the relevant issue is the *timing* of that consideration. We conclude that the district court considered the § 3553(a) factors *before* granting the downward departure for substantial assistance. (It just found that no downward variance under those factors was warranted.) Accordingly, the fact that the district court considered the § 3553(a) factors does not resolve the issue of whether it was obliged to do so *after* granting A.B. a downward departure for substantial assistance.

10

924(c)(1)(A)(i) and (D)(ii).[6]  Mandatory minimum sentences are subject to few statutory

exceptions.  Section 3553(e) is the exception relevant here, providing:

> **Limited authority to impose a sentence below a statutory
> minimum.**— Upon motion of the Government, the court shall have
> the authority to impose a sentence below a level established by
> statute as a minimum sentence so as to reflect a defendant's
> substantial assistance in the investigation or prosecution of another
> person who has committed an offense.  Such sentence shall be
> imposed in accordance with the guidelines and policy statements
> issued by the Sentencing Commission pursuant to section 994 of title
> 28, United States Code.

In accordance with the duty imposed by 28 U.S.C. § 994(n), the Sentencing Commission

promulgated U.S.S.G. § 5K1.1 to implement § 3553(e).[7]  *See United States v. Campbell*,

995 F.2d 173, 174 n.2 (10th Cir. 1993).

According to A.B., once the government moved for a substantial assistance

downward departure, which would have resulted in a below-mandatory minimum

sentence, the district court also was obligated to consider granting a variance under §

3553(a) to further decrease the sentence below the otherwise mandatory threshold.  This

---

[6]  A.B. argues, and the government concedes, that the district court's departure authority under § 3553(e) would have permitted a sentence below both mandatory minimum sentences.  The district court, however, chose only to depart as to the drug count.

[7]  U.S.S.G. § 5K1.1 provides: "Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines." The district court shall state the reasons for its determination of the "appropriate reduction," which may draw from a non-exclusive list of considerations specified in § 5K1.1, including the nature and extent of the defendant's cooperation and the truthfulness of the defendant's information.  U.S.S.G. § 5K1.1(a)(2), (3).

argument is inconsistent with our decision in *Campbell*, where we held that only substantial assistance considerations may support a downward departure below a mandatory minimum sentence pursuant to § 3553(e). *Campbell*, 995 F.2d at 175.

In *Campbell*, the defendant was convicted of conspiring to possess with intent to distribute five or more kilograms of cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1), and thus was subject to a ten-year mandatory minimum sentence under § 841(b)(1)(A). After the government moved for a downward departure based on his substantial assistance, the defendant moved for an additional downward departure based on his diminished capacity pursuant to U.S.S.G. § 5K2.13. In affirming the district court's refusal to grant the defendant's motion, we noted that "[w]hen a sentence is fixed by statute, any exception to the statutory directive must also be given by statute." 995 F.2d at 175. As embodied in § 3553(e), we interpreted the mandatory minimum exception to relate to only factors bearing on the defendant's substantial assistance. Accordingly, we concluded: "The mandatory language of 21 U.S.C. § 841(b)(1)(A), and the expressly limited exception granted in 18 U.S.C. § 3553(e), convince us that a downward departure from the statutory minimum sentence for any purpose other than that provided in U.S.S.G. § 5K1.1 would conflict with and therefore violate the statute." *Id.*

A.B.'s response to *Campbell*—predicated on *United States v. Booker*, 543 U.S. 220 (2005)—is stated succinctly in his brief: "Because *Campbell* relied on the mandatory nature of the guidelines, and addressed only 'departures' and not reasonable sentences under § 3553(a), it no longer has the force of law after *Booker*." Aplt. Op. Br. at 11.

12

Although we have not had occasion to address the post-*Booker* vitality of *Campbell*, the Eighth Circuit reviewed essentially the same issue in *United States v. Williams*, 474 F.3d 1130 (8th Cir. 2007). It concluded that "[n]othing in the reasoning of *Booker* expands the authority of a district court to sentence below a statutory minimum." 474 F.3d at 1132. Because it concluded that this authority under § 3553(e) was limited to consideration of substantial assistance factors, the Eighth Circuit rejected defendant's contention that the district court was permitted to "reduce the sentence further based on factors, other than assistance, set forth in 18 U.S.C. § 3553(a)." *Id.* at 1130.

The *Williams* court relied upon the text of the statute.[8] Significantly, it noted that the first textual sentence of the statute expressly defines the sentencing court's limited authority: the court may impose a below-mandatory minimum sentence "only '*so as to reflect a defendant's substantial assistance.*'" *Id*. at 1132 (quoting § 3553(e)). The sentencing court exceeds its limited authority to grant the departure if it considers other factors, such as the defendant's history and characteristics pursuant to § 3553(a). *Id.*

---

[8] The *Williams* court also relied on the title of § 3553(e), reasoning that by using the term "limited authority" in the section's heading, Congress intended that mandatory minimum sentences be strictly enforced subject to "carefully 'limited' exceptions." *Id*. at 1132 (quoting *United States v. Ahlers*, 305 F.3d 54, 61-62 (1st Cir. 2002)). In this small, discrete area, we decline to follow *Williams*'s approach, concluding that the plain terms of § 3553(e) clearly signal Congress's intent. *See United States v. Glover*, 52 F.3d 283, 286 (10th Cir. 1995) (noting that "under the general rules of statutory interpretation, the title to a statutory provision is not part of the law itself, although it can be used to interpret an ambiguous statute," and because the provisions at issue were "unambiguous" concluding that "reliance on the title is unnecessary and inappropriate"); *see also United States v. Rakes*, 510 F.3d 1280, 1289 (10th Cir. 2007) ("Neither can titles of statutory or Guidelines provisions limit the plain meaning of the provisions themselves.").

Further, the second textual sentence "refers back to the penal sentence contemplated in the first textual sentence, and thus 'restricts the court's reference to those guidelines and policy statements that bear directly upon the desirability and extent of a substantial assistance departure.'" *Id*. (quoting *United States v. Ahlers*, 305 F.3d 54, 61 (1st Cir. 2002)).[9]

Turning to *Booker*, the *Williams* court noted that the Supreme Court's cure for the constitutional infirmity of the mandatory Guidelines system pertained to the scope of a district court's sentencing discretion under the Guidelines; it did not cast constitutional doubt on statutory mandatory minimums. *Id.* at 1132. Specifically, the court stated that under *Booker* "a district court is authorized to consider the factors set forth in § 3553(a), and to vary from the sentence otherwise indicated by *the sentencing guidelines*. But *Booker* did not question the constitutionality of statutory mandatory minimums . . . ." *Id.* Therefore, it reasoned, because of the continued constitutionality of mandatory minimum sentences, and necessarily concomitant constitutionality of congressional restrictions on a

---

[9]     *Ahlers*'s observation is instructive:

> [The] second textual sentence restricts the court's reference to those guidelines and policy statements that bear directly upon the desirability and extent of a substantial assistance departure. In our opinion, that is why Congress used the adjective "such" to modify the subject ("sentence") of the second textual sentence. That usage plainly refers back to the penal sentence mentioned in the previous text, that is, a sentence fashioned "so as to reflect the defendant's substantial assistance."

305 F.3d at 61.

14

sentencing court's authority to go below such statutory minimums, "the remedial holding of *Booker* does not impact the pre-existing limitation embodied in § 3553(e)." *Id.*

This reasoning of *Williams* is persuasive and strongly militates in favor of the continuing vitality of *Campbell.* A.B.'s specific contentions to the contrary are unavailing. Citing our decision in *United States v. Yazzie*, 407 F.3d 1139, 1145-46 (10th Cir. 2005), A.B. argues that a portion of § 3553(e)'s second textual sentence which specifies that the criminal sentence "shall be imposed in accordance with the guidelines" should have been judicially excised after *Booker*. *See* Aplt. Op. Br. at 13. The effect, A.B. reasons, would have been to permit the district court to operate under an advisory Guidelines system. And, in so doing, the district court would have been obliged to consider—in addition to defendant's substantial assistance—§ 3553(a) factors in imposing a sentence below the statutory minimum. *Id*. at 13-14.[10]

In *Yazzie*, we noted that "[s]ection 3553(b)(2) contains the same 'shall impose' language that made application of the Guidelines mandatory under § 3553(b)(1)." 407 F.3d at 1145. In *Booker*, the Court cured the mandatory Guidelines problem in part by excising § 3553(b)(1) from the Sentencing Reform Act. As a result, the Guidelines were

_____

[10]     In arguing for excision, A.B. appears to tacitly concede the point highlighted in *Williams*—that the language of the second textual sentence contemplates that Guidelines factors will be employed only insofar as they relate to the kind of departure identified in the first textual sentence, that is, one based on substantial assistance. 474 F.3d at 1132. In particular, A.B.'s argument operates on the premise that a central component of this second textual sentence (i.e., the language "shall be imposed in accordance with the guidelines") must be absent before a district court would be permitted, and indeed obliged, to consider factors other than substantial assistance.

15

rendered advisory and, thus, constitutional. *Id.* Accordingly, we reasoned that *Booker* also required us to excise § 3553(b)(2). *Id.* In sum, we stated: "Therefore, we hold that treating the Guidelines as mandatory—regardless of whether the defendant is sentenced under § 3553(b)(1) or § 3553(b)(2)—is error." *Id.* at 1146.

The *Williams* analysis, however, suggests the fatal flaw in A.B.'s argument: *Yazzie* pertains to the constitutionality of restrictions on the district court's discretion to sentence *under the Guidelines*; it does not speak to the constitutionality of statutory limitations on the district court's authority to sentence below *statutory mandatory minimums*. *See Williams*, 474 F.3d at 1132 (noting that "while the [*Booker*] Court excised §§ 3553(b)(1) and 3742(e) from the Code, § 3553(e) was unmentioned"). And, because it does not speak to the constitutionality of such limitations, *Yazzie*, like the *Booker* decision on which it relies, "does not impact the pre-existing limitations embodied in § 3553(e)." *Id.*

A.B.'s reliance, moreover, on cases interpreting § 3553(f), the "safety valve" provision, is misplaced. *See United States v. Duran*, 383 F. Supp. 2d 1345 (D. Utah 2005); *United States v. Cherry*, 366 F. Supp. 2d 372 (E.D. Va. 2005). Section 3553(f) provides that, so long as five specified factors are met, courts must disregard a statutory minimum sentence and impose a lower sentence pursuant to the Guidelines.[11] According

---

[11] Section 3553(f) states:

> **Limitation on applicability of statutory minimums in certain cases.**—Notwithstanding any other provision of law, in the case of [certain controlled substance offenses], the court shall impose a sentence pursuant to guidelines promulgated by the United States

(continued...)

16

to A.B., those cases "have addressed and rejected mandatory application of the guidelines, post-*Booker*, in below-minimum-mandatory sentencing." Aplt. Op. Br. at 14.

Those cases, however, are inapposite. As evident in A.B.'s own description of them, those cases are focused on an entirely different question than the one before us: that is, whether the Guidelines range should be deemed binding when a sentencing court is freed from the constraint of the mandatory minimum sentence by the safety valve provision. *See Duran*, 383 F. Supp.2d at 1346 (finding "unpersuasive" the government's argument that "the Guidelines nonetheless remain mandatory when the court proceeds under the safety valve"); *Cherry*, 366 F. Supp.2d at 375 ("The question before the Court is whether the safety valve provision mandates a sentence within the guideline range."). In other words, the issue in those cases is whether, once the door is opened for full judicial consideration of the Guidelines, the district court is deprived of the discretion to deviate from the prescribed Guidelines range. In contrast, the focus here is not on judicial

---

[11](...continued)
> Sentencing Commission under section 994 of title 28 without regard to any statutory minimum sentence, if the court finds at sentencing, after the Government has been afforded the opportunity to make a recommendation, that [five specific conditions have been met].

18 U.S.C. § 3553(f). *See United States v. Jackson*, 493 F.3d 1179, 1180 (10th Cir. 2007) ("By virtue of their comparatively 'clean' records, Congress has instructed that individuals with but a single criminal history point may be eligible for the so-called 'safety valve' reduction codified in 18 U.S.C. § 3553(f); under this provision, individuals may escape the normal operation of Congress's mandatory-minimum five-year sentence . . . ."); *accord Ahlers*, 305 F.3d at 59 ("Congress enacted the safety valve to mitigate the harsh effects of mandatory minimum sentences on certain first-time offenders who played relatively minor roles in drug-trafficking schemes.").

discretion *under the Guidelines*; rather, it is on congressional limitations on a court's sentencing authority *under a mandatory minimum sentencing regime*. More specifically, the issue is whether, in providing a door for escaping the downward sentencing constraint of a statutory minimum, Congress can place limitations on the factors a sentencing court may properly consider once the door is opened (i.e., require the sentencing court to consider only factors bearing on a defendant's alleged substantial assistance). *See Ahlers*, 305 F.3d at 60. Therefore, A.B.'s § 3553(f) cases do not speak to the issue before us.

Furthermore, it is clear that "Congress had different plans in mind for the operation and effect" of § 3553(f) and § 3553(e). *Id.* at 59; *see United States v. Altamirano-Quintero*, 511 F.3d 1087, 1090 n.6 (10th Cir. 2007) (discussing the legal regimes of § 3553(f) and § 3553(e), and noting "[a]lthough these statutory and guideline provisions provide two methods by which a defendant can avoid a statutory mandatory minimum sentence, these two methods provide very different means to do so"). Comparing § 3553(f) with § 3553(e), the First Circuit in *Ahlers* noted, "the conclusion is inescapable that the language Congress used in these two sections differs radically—and that the difference hardly can be dismissed as a mere fortuity." *Id.* at 58.

Specifically, § 3553(f) requires the district court to disregard the mandatory minimum sentence when certain conditions are met. *Id.* at 59. The statute "demonstrates Congress's ability to deploy unambiguous statutory language when it intends to authorize sentencing judges to ignore the limitations imposed by statutory minimum sentences and treat a 'mandatory minimum' case *like any other*." *Id.* (emphasis added). In contrast, §

18

3553(e) "speaks in much more circumspect terms." *Id.* It "retains the mandatory minimum as a reference point for a specific, carefully circumscribed type of departure." *Id.* Section 3553(e) "opens the door for a departure below the otherwise applicable mandatory minimum—but only those reasons related to the nature and extent of the defendant's substantial assistance can figure into the ensuing sentencing calculus." *Id.* at 60. In other words, unlike under § 3553(f), upon granting a § 3553(e) downward departure, a district court is not at liberty to treat the case "like any other," but rather must focus only on substantial assistance considerations. As with the defendants in *Ahlers*, A.B. offers "no explanation" for why statutes that evince the kind of significant differences exhibited by § 3553(f) and § 3553(e) "should be deemed to march in lockstep." *Id.* at 59. And we discern no such explanation. In sum, A.B.'s § 3553(f) cases are inapposite and his reliance on them is misplaced.

Based on the foregoing analysis, we conclude that *Booker* did not abrogate our holding in *Campbell*. Furthermore, nothing in the logic of *Campbell* even suggests that its holding (expressly relating to downward departures) should apply with any less force in the context of variances under § 3553(a). Although foreshadowing such a contention in his brief,[12] A.B. presented no argument to this effect.

Accordingly, the district court here was without authority to go further below the statutory minimum based upon § 3553(a) factors after departing below the mandatory

---

[12]   *See* Aplt. Op. Br. at 11 ("Because *Campbell* relied on the mandatory nature of the guidelines, *and addressed only 'departures' and not reasonable sentences under § 3553(a)*, it no longer has the force of law after *Booker*." (emphasis added)).

19

minimum under the authority of § 3553(e). In other words, "the court ha[d] discretion to sentence below that minimum in a manner that reflects the nature and extent of the substantial assistance provided by the defendant—no more, no less." *Ahlers*, 305 F.3d at 60. Therefore, the district court could not have erred in failing to consider the § 3553(a) factors after it applied a downward departure pursuant to § 3553(e).

**B.      Consideration of § 3553(a) Factors Before Departure Analysis**

A.B. alternatively contends that the district court "could have and should have" considered his non-frivolous § 3553(a) arguments in determining whether to grant him a lower sentence *before* granting the government's motion for a substantial assistance downward departure under § 3553(e), but that the court failed to do so. Aplt. Op. Br. at 23; *see id.* at 24 ("The district court wholly ignored the grounds urged by [A.B.] in support of a variant sentence under § 3553(a). Rather it focused exclusively on the sentence-reduction value of [A.B.'s] cooperation and the government's assessment of its worth."). In seeking a more lenient below-Guidelines sentence under § 3553(a), A.B. argued that his divorce precipitated a destructive downward spiral: he attempted to commit suicide twice, lost his steady employment, increased his use of illegal drugs, and, eventually, started trafficking in drugs.

Under his proposed approach, A.B. contends that the district court could have imposed a sentence near the desired sixty months without violating the asserted prohibition of *Campbell* against varying below a mandatory minimum sentence based on § 3553(a) factors. Specifically, reasons A.B., the district court *first* could have granted a

20

downward variance to the mandatory minimum (i.e., sixty months) from the Guidelines range of 97 to 121 months based on § 3553(a) factors, and *then* could have used that lower level as the baseline for a substantial assistance downward departure of forty months, which was the number of months the district court determined appropriately recognized the value of A.B.'s cooperation. According to A.B., there would have been no legal impediment to following this course because nothing in § 3553(a) or Tenth Circuit case law "mandates the order which a district court should assess sentencing information and considerations before imposing a sentence."[13] Aplt. Op. Br. at 23.

A.B.'s argument has some support in the case law outside our circuit. For example, in *United States v. Coyle*, 506 F.3d 680 (8th Cir. 2007), the Eighth Circuit concluded:

> We see nothing in *Booker* or the relevant statutes that prevents a district court in this situation from relying to some degree on both § 3553(a) and § 3553(e) to fashion an appropriate sentence. The text of § 3553(e) prohibits a district court from relying on factors other than assistance as a basis for sentencing *below* the statutory minimum. But here, the district court had some flexibility *above* the statutory minimum to determine Coyle's sentence in accordance with the factors in § 3553(a).

*Id.* at 683 (citation omitted); *see also United States v. Beamon*, 373 F. Supp. 2d 878, 884

---

[13] At oral argument, the government seemed to accept the basic premise of this argument: that is, that the district court could have lawfully employed the § 3553(a) factors in varying downward from the bottom of the advisory Guidelines range to the sixty-month mandatory minimum on the drug count and then departed further downward below that statutory mandatory minimum based on substantial assistance under the authority of § 3553(e). However, the government vigorously argued that in fact the district court did consider § 3553(a) and determined that a variance was not warranted.

(E.D. Wis. 2005) ("In the present case, the defendant's guideline range exceeded the mandatory minimum. Thus, I could consider the § 3553(a) factors in determining whether to select a lower guideline range from which to depart, so long as the range was consistent with the statutory mandatory minimum.").

However, contrary to A.B.'s assertion, his proposed approach is—at the very least—in significant tension with our caselaw, which may require district courts to consider all available Guidelines departures *before* factoring § 3553(a) factors into the sentencing calculus. *See United States v. Calzada-Maravillas*, 443 F.3d 1301, 1305 (10th Cir. 2006); *see also* Lee D. Heckman, Note, *The Benefits of Departure Obsolescence: Achieving the Purposes of Sentencing in the Post-Booker World*, 69 Ohio St. L.J. 149, 152 n.16, 171 n.136 (identifying the Tenth Circuit as one of the circuits that "require[s] calculating applicable departures as part of consulting the Guidelines," and citing *Calzada-Maravillas* as support for this proposition). *Cf. Gall*, 128 S.Ct. at 596 ("[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.").

In *Calzada-Maravillas*, we stated: "Because the Supreme Court required each district court to 'consult those Guidelines and take them into account when sentencing,' a district court's sentencing decision 'necessarily includes consideration of these Guideline departure provisions.'" *Id.* (citation omitted) (quoting, respectively, *United States v. Booker*, 543 U.S. 220, 264 (2005), and *United States v. Sierra-Castillo*, 405 F.3d 932, 939 n.5 (10th Cir. 2005)). In support of this statement, *Calzada-Maravillas* cited cases

22

that could be read to require district courts to consider available Guidelines departures as part of their *initial* consultation of the Guidelines. *See id.* at 1305 (citing *United States v. Haack*, 403 F.3d 997 (8th Cir. 2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005)).[14] At least one commentator has concluded that the Tenth Circuit is among the ranks of the "vast majority of circuits" that (in substance) employ "a three-step process where the sentencing judge: (1) calculates the applicable guidelines range; (2) calculates any applicable departures from that guideline range; and (3) determines whether to follow this sentence or vary from it based on § 3553(a) factors." Heckman, *supra*, at 152 (collecting cases and including the Tenth Circuit among the "vast majority of circuits"); *see, e.g.*, *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006) (noting that "our post-*Booker* precedent instructs district courts to follow a three-step sentencing process" in which, first, they must "calculate a defendant's Guidelines sentence precisely," second, they must "state on the record whether they are granting a departure," and third, "exercise their discretion by considering relevant § 3553(a) factors" (internal quotation marks and alterations omitted)).

If our caselaw requires rigid adherence to this three-step approach, A.B.'s argument must fail at the outset, for he seeks to at least partially reverse the second and third steps. However, the appropriate *timing* of a district court's consideration of the

---

[14]    For example, in *Haack*, the court stated: "Once the applicable range is determined, the court should then decide if a traditional departure is appropriate under . . . the Federal Sentencing Guidelines. . . . Once the guidelines sentence is determined, the court shall consider all other factors set forth in § 3553(a) to determine whether to impose the sentence under the guidelines or a non-guidelines sentence." 403 F.3d at 1003.

availability of Guidelines departures may still be an open question in this circuit. The issue in *Calzada-Maravillas* was a somewhat unrelated one: that is, whether "the district court erred in departing upward without providing notice" to the defendant. 443 F.3d at 1302. Arguably, to the extent that the court addressed Guidelines departures, its concern only was whether Guidelines departures were still a viable tool after *Booker*—that is, whether *Booker* rendered Guidelines departures obsolete. 443 F.3d at 1305. *Cf.* Heckman, *supra*, at 153 (focusing principally on the viability of Guidelines departures post-*Booker* and proposing that they "should be recognized for what they've become: obsolete"). The viability issue (rather than the timing question) appears to have been the principal concern of our prior decision upon which we relied in *Calzada-Maravillas*. *See* 443 F.3d at 1305 (citing *Sierra-Castillo*, 405 F.3d 939 n. 5).[15] We ultimately concluded in *Calzada-Maravillas* that "guideline departures survive *Booker*." 443 F.3d at 1305. Therefore, *Calzada-Maravillas* conceivably could be read as resolving only the question

---

[15]   Reflecting the viability concern, in *Sierra-Castillo*, we stated:

> That the Supreme Court excised the statute on which § 5K2.0 is based, however, does not call into question the continuing validity of § 5K2.0. That section provides the general standard for departures under the Guidelines, on which the specific departure provisions in §§ 5K2.0-5K2.23 are derived. This court has noted that "departures are an integral part of the guideline application process." The Supreme Court's requirement that district courts continue to "consult" the Guidelines therefore necessarily includes consideration of these Guidelines departure provisions.

405 F.3d at 939 n.5 (citations omitted) (quoting *United States v. Davis*, 900 F.2d 1524, 1529 (10th Cir. 1990)).

24

of the post-*Booker* viability of Guidelines departures, not the *timing* of the district court's consideration of them.

In this case, we need not decide whether *Calzada-Maravillas* has resolved the timing issue in favor of the three-step approach or something akin to it. And, more specifically, we are not obliged to determine whether the three-step approach—even if binding in this circuit—would be appropriately applied in the context of substantial assistance downward departures under § 3553(e).[16] Assuming *arguendo*, as A.B. contends, that the district court was obliged to consider the § 3553(a) factors, and particularly A.B.'s allegedly non-frivolous arguments relating to them, *before* granting the substantial assistance downward departure under § 3553(e), our review of the record convinces us that the district court did precisely that. Accordingly, A.B.'s contention of error must fail.

---

[16]     At least under a rule like that articulated in *Campbell* (which we reaffirm here), strict adherence to the three-step approach arguably could have some unfortunate consequences. It conceivably could engender disparities between defendants who are similarly situated insofar as their advisory Guidelines ranges are above the applicable statutory minimum—specifically, those who provided no cooperation would be eligible to receive downward variances to the mandatory minimum, but those who cooperated and received substantial assistance downward departures would not (i.e., no variance would be permitted before the substantial assistance downward departure under the three-step approach and, under a rule like *Campbell*'s, no variance would be permitted after the departure). *See Coyle*, 506 F.3d at 683-84. And it arguably "would create tension with the requirements of *Booker* that a sentence above a statutory minimum be governed by § 3553(a) as a whole, not only by the sentencing guidelines." *Id.* at 683. Indeed, although it has otherwise endorsed the three-step approach, these possible adverse consequences led the Eighth Circuit in *Coyle* to deviate from that approach and to consider the § 3553(a) factors *before* addressing the government's substantial assistance motion. *Id.* at 683-84.

"Section 3553(a) imposes on the district court a duty to '*consider*' a variety of important sentencing considerations. But it nowhere imposes on the court a duty to address those factors on the record . . . ." *United States v. Ruiz-Terrazas*, 477 F.3d 1196, 1201 (10th Cir.), *cert. denied*, 128 S. Ct. 113 (2007). Further, in *Ruiz-Terrazas*, in describing our review responsibilities where the district court has imposed a within-Guidelines sentence, we stated: "We traditionally presume, absent some indication in the record suggesting otherwise, that trial judges are presumed to know the law and apply it in making their decisions." *Id.* at 1202 (quotation marks and alterations omitted). Accordingly, "we will step in and find error when the record gives us reason to think that our ordinary [] presumption that the district court knew and applied the law is misplaced." *Id.*

Nothing gives us reason to step in here. The record demonstrates that, not only did the district court consider the § 3553(a) factors, including A.B.'s mitigative arguments predicated on them, but also it did so *before* granting A.B. a substantial assistance downward departure under § 3553(e). Prior to the hearing the district court had an opportunity to consider A.B.'s sentencing memorandum, which detailed his arguments for a below-Guidelines sentence of sixty months; at the sentencing hearing, the district court specifically acknowledged having reviewed the memorandum. *See* R., Vol. III, Tr. at 3. The district court allowed A.B. to fully air his arguments, listening to A.B.'s defense counsel and A.B. himself. *Id.* at 3, 10-11. Then, before announcing a sentence of any kind, the district court spoke to A.B. about some of the circumstances of the offense

26

that gave it concern. The comments reflected the court's awareness of the § 3553(a) factors. Specifically, in tacit recognition of § 3553(a)(1) ("the nature and circumstances of the offense") and (a)(2)(A) ("the seriousness of the offense"), the district court discussed the "severe" consequences associated with "dealing in narcotics" and possessing "loaded firearms." *Id.* at 11. The court said it was "going to take account of both of those" in imposing sentence on A.B. *Id.* Immediately prior to doing so, the district court made explicit what its remarks already revealed—that it had given consideration to the § 3553(a) factors, saying: "The Court has reviewed the presentence report factual findings and considered the Sentencing Guidelines applications, *as well as the factors of 18 United States Code, Section 3553.*" *Id.* at 12 (emphasis added).[17] Only at that juncture did the court announce a sentence. And, significantly, it did not announce a unitary sentence that already embodied a substantial assistance downward departure. Instead, the court first announced its decision to adhere to the advisory Guidelines range of 97 to 121 months. Almost immediately thereafter, it granted the government's substantial assistance motion and departed downward forty months from the bottom of that Guidelines range.

The upshot is that before addressing the substantial assistance issue, the district

---

[17]     Indeed, as further evidence of its awareness of the § 3553(a) factors, after concluding its announcement of the incarceration portions of A.B.'s sentence (as adjusted by the substantial assistance downward departure), the district court recognized A.B.'s drug addiction, "strongly" recommending that he participate in a 500-hour drug and alcohol treatment program. Aplt. Op. Br. at 13; *see* 18 U.S.C. § 3553(a)(2)(D) (requiring the consideration in the sentence of a defendant's "needed . . . medical care").

court considered the § 3553(a) factors, as well as A.B.'s mitigative § 3553(a) arguments, and made an assessment concerning the impact that they should have on the advisory Guidelines range—that is to say, the district court operated precisely in the manner A.B. urges. The district court simply did not reach A.B.'s desired result. Instead, it concluded that the advisory Guidelines range was appropriate and reasonable in light of the § 3553(a) factors and used the bottom of that range as the baseline from which to depart downward for substantial assistance under § 3553(e).

As proof that the district court failed to "consider" the § 3553(a) factors, A.B. repeatedly refers to the district court's silence concerning his specific mitigative arguments. *See, e.g.*, Aplt. Op. Br. at 18 ("The court did not once mention any of the mitigating § 3553(a) factors argued by [A.B.]."); *id.* at 24 ("The district court wholly ignored the grounds urged by [A.B.] in support of a variant sentence under § 3553(a)."); *see also* Aplt. Reply Br. at 4 (noting that "a district court's sentence within correctly calculated advisory guidelines does not in itself demonstrate that the court has considered the evidence" particularly "when, as here, the defendant presented and argued facts implicating § 3553(a) factors" and the court "never acknowledged or discussed those factors").

However, as noted, § 3553(a)'s mandate that a district court "consider" the specified sentencing factors simply does not impose "a duty to address those factors on the record," *Ruiz-Terrazas*, 477 F.3d at 1201, including those factors that a defendant highlights. Indeed, when the district court adheres to the advisory Guidelines range, we

have held that even 18 U.S.C. § 3553(c)—which "speaks expressly to the nature of the

district court's duty to explain itself on the record," *id.*—does not impose upon district

courts a duty to engage in the kind of particularized analysis sought by A.B.[18]  *See, e.g.*,

---

[18]  A.B.'s appellate briefs are replete with references to the district court's failure to "consider" the § 3553(a) factors, and he never expressly refers in these filings to § 3553(c).  *See, e.g.*, Aplt. Op. Br. at iii-v (Table of Authorities); Aplt. Reply Br. at iii-iv (Table of Authorities).  Nonetheless, at certain points in his briefs, A.B. appears to be objecting to the district court's failure to explain its sentence, which is essentially a § 3553(c) argument.  *See, e.g.*, Aplt. Op. Br. at 8 ("Because the district court failed to make a record regarding the § 3553(a) factors, this Court cannot review the reasonableness of the resulting sentence, and this Court should therefore vacate the sentence and remand it to the district court for re-sentencing."); *id.* at 25 ("[T]he district court's failure to make any record on how it regarded [A.B.'s] non-frivolous mitigating factors leaves this Court in a 'zone of speculation on appellate review' . . . ."  (quoting *United States v. Sanchez-Juarez*, 446 F.3d 1109, 1116 (10th Cir. 2006))); Aplt. Reply Br. at 7 ("Without the benefit of the district court first considering and weighing [A.B.'s] evidence and argument in support of a mitigated sentence, this Court has no basis on which to review the reasonableness of the sentence it imposed." (citing *Sanchez-Juarez*, 446 F.3d at 1117)).

A.B. repeatedly cites to *Sanchez-Juarez*, 446 F.3d at 1116-17, a case that "concern[ed] a district court's obligations of explanation at sentencing," in which we vacated the sentence in part because we were "unable ourselves to discern a 'clear explanation of the sentence' in the record." *Ruiz-Terrazas*, 477 F.3d at 1199, 1202.  We noted in *Sanchez-Juarez* that the defendant had presented a non-frivolous argument for a below-Guidelines sentence, which A.B. repeatedly asserts that he has likewise done.  However, as suggested by the discussion in the accompanying text, even if we were to construe A.B.'s arguments as embodying a § 3553(c) challenge, it would fail, because § 3553(c) does not impose the kind of particularized-assessment duty on district courts that A.B. seeks.  *See Jarrillo-Luna*, 478 F.3d at 1230 ("Lest any doubt remain about the meaning of *Sanchez-Juarez*, we hold that a district court's duty to explain why it chose the given sentence does not also require it to explain why it decided against a different sentence.").  *Compare Rita*, 127 S. Ct. at 2468 ("[W]hen a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require lengthy explanation."), *with United States v. Angel-Guzman*, 506 F.3d 1007, 1016-17 (10th Cir. 2007) (noting that the "guidance" in *Rita* "regarding how extensive the sentencing court's statement of reasons must be" does not "seem to contemplate explanations more searching or extensive that those required by our Circuit in cases prior to *Rita*," citing,

(continued...)

29

*Jarrillo-Luna*, 478 F.3d at 1229 (rejecting defendant's contention that "his sentence was procedurally unreasonable because the district court failed to explain why it rejected his arguments that he should be sentenced below the Guideline range"); *Ruiz-Terrazas*, 477 F.3d at 1201 ("[W]e see nothing in Section 3553(c) requiring a specific explanation from the district court of a sentence falling within the Guidelines range."). Therefore, we do not find A.B.'s purported "proof" of the district court's failure to consider the § 3553(a) factors to be persuasive and, in fact, affirmatively conclude that the district court did consider these factors.

Therefore, even assuming that the district court was obliged to consider the § 3553(a) factors, and particularly A.B.'s allegedly non-frivolous arguments relating to them, *before* granting the substantial assistance downward departure under § 3553(e), we conclude from our review of the record that the district court did precisely that. A.B.'s second contention of error fails.

## III. CONCLUSION

---

[18](...continued)
*inter alia*, *Jarrillo-Luna*). Indeed, the district court arguably may have exceeded what § 3553(c) required on these facts. In particular, after entertaining rather extensive briefing and arguments on whether to vary, it clearly and expressly identified two issues that would affect its decision (i.e., drug trafficking and possession of a loaded firearm) before it decided to adhere to the advisory Guidelines range, *See United States v. McComb*, 519 F.3d 1049, 1055 (10th Cir. 2007) (referencing the "threshold" requirements of § 3553(c) and noting that we had "little difficulty concluding that the district court's explanation met, and exceeded, this legal threshold, where the court "entertained substantial written submissions and live testimony on the question whether to vary" and where "it proferred four analytically distinct reasons for choosing its sentence rather than one below the Guidelines' range, most of which were supported by case-specific factual findings").

Because we discern no procedural error in the district court's imposition of A.B.'s sentence, we **AFFIRM** the sentence.