**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 16, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ALVARO OMAR CUEVAS-BRAVO,
a/k/a Joel Alcala, also known as
Avarado Omar Cuevas,

Defendant - Appellant.

No. 14-5026
(D.C. No. 4:13-CR-00213-GKF-1)
(N.D. Oklahoma)

**ORDER AND JUDGMENT**[*]

Before **GORSUCH**, **MURPHY**, and **HOLMES**, Circuit Judges.

After examining the briefs and appellate record, this court has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2)(C); 10th Cir. R. 34.1(G). Accordingly, we grant the parties' requests and order the case submitted without oral argument.

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Alvaro Cuevas-Bravo pleaded guilty to being a previously deported alien illegally found in the United States, in violation of 8 U.S.C. § 1326(a). The district court sentenced Cuevas-Bravo to forty-six months' imprisonment, a term eleven months below the bottom of the advisory range set out in the United States Sentencing Guidelines. Cuevas-Bravo appeals, asserting the sentence imposed by the district court is unreasonable. This court exercises jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, and **affirms** the sentence imposed by the district court.

Cuevas-Bravo is a citizen of Mexico. In 2002 he pleaded guilty to burglary of a habitation, in violation of Texas Penal Code Ann. § 30.02. After serving a sentence of incarceration, Cuevas-Bravo was deported to Mexico in June of 2004. He was found in the United States in October of 2004 and was, again, deported to Mexico. Cuevas-Bravo reentered the United States in late 2004 and remained for nearly a decade. In September of 2013 he was arrested in Tulsa, Oklahoma, and charged with unlawful possession of a controlled drug with intent to distribute.[1]

On November 5, 2013, a federal grand jury handed down an indictment charging Cuevas-Bravo with being illegally present in the United States, in violation of § 1326(a). Cuevas-Bravo entered a guilty plea to the charge. At a hearing on his petition to enter a guilty plea, Cuevas-Bravo's attorney

---

[1]He eventually pleaded guilty to this charge and was sentenced to a suspended two-year term of imprisonment.

affirmatively acknowledged that, at the forthcoming sentencing hearing, Cuevas-Bravo's 2002 Texas burglary conviction would result in a sixteen-level increase to his offense level, pursuant to the terms of U.S.S.G. § 2L1.2(b)(1)(A)(ii).  R. Vol. II, at 12 ("I know that [the burglary conviction] qualifies for the 16-level enhancement under the guidelines . . . .").

The United States Probation Office prepared a Presentence Investigation Report ("PSR").  The PSR concluded Cuevas-Bravo's base offense level was eight.  U.S.S.G. § 2L1.2(a).  Consistent with the discussions at the change-of-plea hearing, the PSR concluded Cuevas-Bravo's 2002 Texas conviction for burglary of a habitation qualified as a crime of violence, requiring a sixteen-level increase to Cuevas-Bravo's offense level.  *Id.* § 2L1.2(b)(1)(A)(ii).  After a three-level downward adjustment for acceptance of responsibility, *id.* § 3E1.1, Cuevas-Bravo's total offense level was twenty-one.  When that offense level was combined with his category IV criminal history, the resulting advisory guideline range was fifty-seven to seventy-one months' imprisonment.  Cuevas-Bravo did not object to the PSR.

Prior to sentencing, Cuevas-Bravo moved for a downward departure and/or a downward variance.[2]  He noted that but for his 2002 burglary conviction he

_____

[2]"[W]hen a court reaches a sentence above or below the recommended Guidelines range through application of Chapters Four or Five of the Sentencing Guidelines, the resulting increase or decrease is referred to as a departure.  When
(continued...)

-3-

would not have received a sixteen-level increase in his offense level and, additionally, would have been eligible for the fast-track program. He maintained that although his burglary conviction was legally defined as a violent act, it was, as a matter of fact, a property crime. R. Vol. I, at 21 ("The thing that differentiates this defendant from others is a decade-old charge for burglary of a habitation, which is unfortunately specifically defined as being a violent act regardless of whether any violence was in fact used. The defendant would submit in his case the burglary was a property crime, not a crime of violence, which would have made him eligible for a rapid removal rather than incarceration."). Thus, he asked that the district court depart and/or vary downward and impose a sentence without regard to the sixteen-level increase set out in § 2L1.2(b)(1)(A)(ii).

At the sentencing hearing, Cuevas-Bravo again focused on the effect his burglary conviction had on his advisory guidelines range, particularly on the fact the conviction prevented him from qualifying for fast-track sentencing.[3] He also

---

[2](...continued)
a court enhances or detracts from the recommended range through application of [18 U.S.C.] § 3553(a) factors, however, the increase or decrease is called a variance." *United States v. A.B.*, 529 F.3d 1275, 1278 n.3 (10th Cir. 2008) (quotations omitted).

[3]In this regard, Cuevas-Bravo argued as follows:

> The U.S. government, at least in the Northern District, has a policy of capturing and exporting as quickly as possible people that

(continued...)

asserted his time as a productive, albeit illegal, member of American society supported a departure or variance. Thus, he requested that the court grant his motion and sentence him as if the sixteen-level adjustment set out in § 2L1.2(b)(1)(A)(ii) was not applicable. The government opposed any deviation from the properly calculated advisory sentencing range set out in the PSR. After hearing the parties' arguments, the district court ruled as follows:

> The court notes for the record that neither the government nor the defendant has filed an objection to the [PSR]. The court has reviewed defendant's motion for a downward variance and/or downward departure . . . and the government's response . . . in opposition. . . .
>
> In defendant's motion for downward variance and/or downward departure . . . , the defendant requests a variance or departure to a base level of 8[, with a further reduction of three levels for acceptance of responsibility]. As grounds for the request, defendant cites that he would have been eligible for the fast-track program but for his conviction of burglary of a habitation in 2001, and that his conviction in that case resulted in a 16-level increase to his guideline calculations.
>
> The court finds that the defendant's criminal history is not overrepresented in this case, as his previous convictions are for

[3](...continued)
are detained in something called a fast-track program, which is normally available to nonviolent persons that are arrested, they get a large downward departure such that they would be eligible for almost immediate deportation.

That does not affect my client, though, because he has a burglary of a residence charge that was approximately ten years ago which is a thing that disqualifies him for that which necessitates my request for downward departure.

serious offenses, including burglary of a habitation and unlawful possession of a controlled drug with intent to distribute. Therefore, the 16-level increase to the defendant's base offense level because the defendant committed a crime of violence is both accurate and appropriate.

However, the defendant has maintained stable employment throughout his adult life and has provided support for his two daughters who reside with their mother in Texas. Following the second of his 2004 deportations, the defendant has had no contact with law enforcement until his arrest in September 2013 which predicated the instant indictment.

Therefore, the court finds that there are factors present in this case that separate this defendant from the mine run of similarly situated defendants who have been found guilty of similar conduct. And accordingly, defendant's motion for downward variance and/or downward departure . . . is granted in part,[4] and the court will vary downward two levels to a total offense level of 19. Combined with the defendant's departure criminal history category of IV, the resulting variance guideline range is 46 to 57 months.

R. Vol. II, at 40-42.

Cuevas-Bravo appeals the downward-variant sentenced imposed by the district court. Unfortunately, the exact basis of his appeal is far from clear. That is, it is difficult to tell from Cuevas-Bravo's brief whether he is challenging the procedural reasonableness of his sentence, the substantive reasonableness of his sentence, or both. For its part, the government asserts Cuevas-Bravo waived any challenge to the procedural reasonableness of his sentence by repeatedly

---

[4]To be clear, as it specifically stated later in the sentencing hearing, the district court denied in its entirety Cuevas-Bravo's request for a downward departure. It granted in part and denied in part Cuevas-Bravo's request for a downward variance.

indicating in the district court that his burglary conviction qualified as a crime of violence within the terms of § 2L1.2(b)(1)(A)(ii).  It further argues Cuevas-Bravo waived any argument as to the substantive reasonableness of his sentence through inadequate appellate briefing.  This court need not resolve the proper standard of review because Cuevas-Bravo's appellate arguments fail whether they are waived, forfeited, or preserved.

"After the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), this court reviews sentences for reasonableness." *United States v. Friedman*, 554 F.3d 1301, 1307 (10th Cir. 2009).  "Reasonableness review is a two-step process comprising a procedural and a substantive component." *Id.* (quotation omitted).  Procedural reasonableness "relates to the manner in which the district court calculated and explained the sentence." *United States v. A.B.*, 529 F.3d 1275, 1278 (10th Cir. 2008).  In determining whether the district court correctly calculated the advisory sentencing range through application of the guidelines, this court reviews the district court's legal conclusions de novo and reviews any factual findings for clear error, giving due deference to the district court's application of the guidelines to the facts. *United States v. Kristl*, 437 F.3d 1050, 1054 (10th Cir. 2006) (per curiam).  Substantive reasonableness review "focuses on whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)." *Friedman*, 554 F.3d at 1307 (quotation omitted).  We review the substantive

reasonableness of a sentence under an abuse-of-discretion standard. *United States v. Sells*, 541 F.3d 1227, 1237 (10th Cir. 2008). A sentence is substantively unreasonable only if the district court "exceeded the bounds of permissible choice, given the facts and the applicable law in the case at hand." *United States v. McComb*, 519 F.3d 1049, 1053 (10th Cir. 2007) (quotation omitted). That is, a "district court abuses [its] discretion when it renders a judgment that is arbitrary, capricious, whimsical, or manifestly unreasonable." *United States v. Haley*, 529 F.3d 1308, 1311 (10th Cir. 2008) (quotation omitted). Where the sentence imposed by the district court is below the properly calculated advisory guidelines range, there is a presumption of reasonableness. *United States v. Trent*, 767 F.3d 1046, 1051 (10th Cir. 2014).

Giving it a generous interpretation, this court can perceive three potential procedural-reasonableness challenges lurking in Cuevas-Bravo's appellate brief. First, Cuevas-Bravo appears to argue his Texas burglary conviction does not fall within the ambit of § 2L1.2(b)(1)(A)(ii) because it was not a burglary of a dwelling. *See* U.S.S.G. § 2L1.2 cmt. n. 1(B)(iii) (defining "crime of violence" to include "burglary of a dwelling"); *United States v. Ventura-Perez*, 666 F.3d 670, 673-77 (10th Cir. 2012) (assuming, without deciding, that the Texas Penal Code includes in its definition of "habitation" buildings that would not qualify as dwellings). The problem for Cuevas-Bravo is that the PSR specifically notes, as a matter of fact, that Cuevas-Bravo burglarized a dwelling. Not only did Cuevas-

Bravo not object to this factual assertion, he specifically stated to the district court, in both his motion for a downward departure/variance and at the sentencing hearing, that the burglary in this case was of a dwelling or residence. Thus, the record clearly establishes the district court was correct in calculating Cuevas-Bravo's offense level by reference to § 2L1.2(b)(1)(A)(ii).

Second, Cuevas-Bravo appears to assert that because the burglary he committed did not actually involve any violence, it was improper to apply the enhancement set out in § 2L1.2(b)(1)(A)(ii). This argument is frivolous.

> The main risk of burglary arises not from the simple physical act of wrongfully entering onto another's property, but rather from the possibility of a face-to-face confrontation between the burglar and a third party—whether an occupant, a police officer, or a bystander—who comes to investigate. That is, the risk arises not from the completion of the burglary, but from the possibility that an innocent person might appear while the crime is in progress.

*See James v. United States*, 550 U.S. 192, 203 (2007) (discussing the Armed Career Criminal Act). There is no requirement in the guidelines that a burglary actually result in violence before § 2L1.2(b)(1)(A)(ii) is applicable.

Third, Cuevas-Bravo's brief could be read to assert the district court erred when it concluded the application of § 2L1.2(b)(1)(A)(ii) did not lead to a sentence that overrepresented Cuevas-Bravo's criminal history and, accordingly, Cuevas-Bravo was not entitled to a downward departure.

> Even after *Booker*, this court has no jurisdiction to review a district court's discretionary decision to deny a motion for downward departure on the ground that a defendant's circumstances do not

-9-

warrant the departure. This court may review a denial of a downward departure only if the denial is based on the sentencing court's interpretation of the Guidelines as depriving it of the legal authority to grant the departure. In making this determination, the district court is presumed to recognize its discretion, unless it unambiguously states it lacks discretion to grant the departure. Ambiguous statements are treated as though the judge was aware of his or her legal authority to depart but chose instead, in an exercise of discretion, not to depart. While this court now has jurisdiction to review a defendant's final sentence for reasonableness, it nevertheless continues to lack jurisdiction to review the discretionary denial of a downward departure.

*United States v. Fonseca*, 473 F.3d 1109, 1112 (10th Cir. 2007) (quotations, citations, and alterations omitted). Because the record in this case makes clear the district court was fully aware of its discretion to depart and denied Cuevas-Bravo a departure because it concluded his circumstances did not warrant such relief, this court lacks jurisdiction to review the determination.

It is also possible to glean from Cuevas-Bravo's appellate brief a challenge to the substantive reasonableness of his sentence. Cuevas-Bravo has not, however, come close to overcoming the presumption of reasonableness that attached to the district court's downward-variant sentence. Given his history of serious offenses, the district court quite reasonably concluded the advisory guidelines range did not overstate the seriousness of Cuevas-Bravo's criminal history. Furthermore, in contrast to Cuevas-Bravo's assertions, reentry by an alien whose previous removal was preceded by the commission of an aggravated felony is a serious crime. This is easily demonstrated by the twenty-year

maximum term of incarceration established by Congress for this offense. 8 U.S.C. § 1326(a), (b)(2). Nevertheless, considering the positive aspects of his character (a caring father who was consistently employed, consistently provided for his daughters, and went long stretches of time without any contact with law enforcement), the district court granted Cuevas-Bravo a significant variance, amounting to eleven months below the bottom of the properly calculated advisory guidelines range. The sentence imposed by the district court is fully supported by the factors set out in § 3553(a).

For those reasons set out above, the sentence imposed by the United States District Court for the Northern District of Oklahoma is hereby **AFFIRMED**.

ENTERED FOR THE COURT

Michael R. Murphy
Circuit Judge